OPINION
{¶ 1} Defendant-appellant Jay Hanson ("Hanson") brings this appeal from the judgment of the Court of Common Pleas of Marion County.
 {¶ 2} On October 20, 2003, Hanson, Josh Lucas ("Lucas"), and David Foreman ("Foreman") broke into a residence while the owner was at work and stole six firearms from a locked gun cabinet. Those firearms were sold later that evening. In the early morning hours of December 16, 2003, Hanson and Lucas stole a 1986 Ford Bronco and drove to a residence on Prospect Street. Hanson and Lucas then entered the house and stole money from a purse. The home was occupied by the 16 year old babysitter, Tabitha Swartz ("Swartz") and the two children. All three were asleep. Either Hanson or Lucas approached Swartz, who was sleeping on the couch and struck her in the head with a tire iron prior to exiting the home. Swartz awoke during the attack and proceeded to hide with the two children in a bathroom. She then called the police and the children's mother before being taken to the hospital for treatment of her head wounds.
 {¶ 3} Hanson and Lucas then drove to a residence on Glad Street. Lucas wished to steal an X-Box from the residence. Hanson and Lucas disabled the telephone lines and unscrewed a security light. Then they proceeded to force open the back door of the residence with the tire iron. At the time, the only occupant at home was 20 year old Emily Fisher ("Fisher") who was asleep in her bed. Hanson put his hand on Fisher's shoulder which caused her to wake. Hanson then attempted to stab Fisher several times as Fisher fought him. Fisher managed to grab a telephone and escape into the bathroom. When she attempted to contact the police, she learned the phone had been disabled. Once she was confident Hanson and Lucas had left, Fisher went to the neighbors' home and contacted the police. Fisher was transported to the hospital where she received emergency surgery for the four stab wounds to her arm and for the stab wound to her neck. Three additional holes were later discovered in the comforter under which she had been sleeping.
 {¶ 4} Lucas and Hanson then disposed of the truck by submerging it in a quarry. They also disposed of their shoes so that any footprints could not be connected to them. Hanson was later interviewed by the police and admitted to his participation in the events of December 16. However, he claimed that Lucas was responsible for striking Schwartz with the tire iron and for stabbing Fisher. Hanson was placed in the local jail. While there he bragged to the other inmates about stabbing Fisher.
 {¶ 5} On December 31, 2003, the grand jury indicted Hanson on the following counts: 1) theft; 2) receiving stolen property; 3) aggravated burglary; 4) aggravated robbery; 5) felonious assault; 6) aggravated burglary; 7) aggravated robbery; 8) felonious assault; 9) felonious assault; 10) disrupting public service; 11) tampering with evidence; 12) burglary; and 13) receiving stolen property. Firearm specifications were added to counts 12 and 13. On January 5, 2004, Hanson entered pleas of not guilty to all charges. A jury trial was commenced on May 11, 2004. On May 14, 2004, the jury found Hanson guilty of counts 1, 2, 3, 6, 7, 8, 9, 11, 12, and 13 as stated in the indictment. Hanson was also convicted of the firearm specifications on counts 12 and 13. Hanson was found not guilty of the remaining charges.
 {¶ 6} A sentencing hearing was held on July 26, 2004. At the hearing, Hanson, the State, and the victims presented statements. A presentence investigative report was also included in the record. Pursuant to R.C. 2941.25, count 2 for receiving stolen property was found to be an allied offense of count 1, theft, and was therefore dismissed. The trial court then sentenced Hanson to one year in prison for the theft conviction, seven years in prison on each of the two aggravated burglary convictions, seven years in prison for the aggravated robbery conviction, seven years in prison for each of the two felonious assault convictions, one year in prison for the tampering with evidence conviction, two years in prison for the burglary conviction, one year in prison for the receiving stolen property conviction, and one year additional mandatory sentences on the firearm specifications. Only one prison term was imposed for the two firearm specifications because the underlying offenses were committed as part of the same transaction. The trial court ordered that counts six and seven, the aggravated burglary and aggravated robbery at the Glad Street residence be served concurrently. The trial court also ordered that the two felonious assault convictions be served concurrently. Finally, the sentences for the burglary and receiving stolen property convictions were ordered to be served concurrently. The remaining charges were to be served consecutively for a total prison sentence of 26 years. Hanson appeals from this judgment and raises the following assignments of error.
The trial court abused its sentencing discretion by sentencing[Hanson] to multiple sentences on allied offenses.
 The trial court erred and created a sentence contrary to lawwhen it failed to follow the required statutory sentencingguidelines.
 [Hanson's] conviction is contrary to the manifest weight ofthe evidence.
 The record contains insufficient evidence to support[Hanson's] conviction because the state failed to prove beyond areasonable doubt that he was an aider or abettor.
 {¶ 7} Since the third and fourth assignments of error address the conviction, we will discuss them first.
 {¶ 8} In the fourth assignment of error, Hanson claims that his conviction for complicity is supported by insufficient evidence. When reviewing the sufficiency of the evidence, we must view the evidence in a light most favorable to the State and determine whether reasonable minds could conclude that the evidence proves every element of the crime beyond a reasonable doubt. State v. Tibbetts, 92 Ohio St.3d 146, 2001-Ohio-132,749 N.E.2d 226. Reviewing courts will not reverse the judgment on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion reached by the trier of fact. Id.
 {¶ 9} Hanson claims that the evidence is insufficient because there is no evidence directly linking him to the offenses. Hanson was convicted of 1) stealing the Ford Bronco; 2) breaking and entering into the residence on Prospect Street with the intent to steal and inflicting harm; 3) breaking and entering into the residence on Glad Street with the intent to steal and inflicting harm; 4) brandishing a weapon during the commission of a theft offense; 5) the stabbing and cutting of Fisher; 6) tampering with evidence by disposing of the shoes; 7) the burglary at Miami Street; and 8) receiving stolen guns. Among the evidence presented was the transcript of the December 19, 2003, interview of Hanson. In the interview, Hanson admits to stealing the Bronco from Park Boulevard. Interview, 7 and 20. Thus, there is sufficient evidence as to the first count.
 {¶ 10} The second count for which Hanson was convicted was for the aggravated burglary at Prospect Street. The State had to prove that Hanson by force or stealth trespassed in an occupied structure when another person was present with the purpose to commit any criminal offense and either Hanson or his accomplice inflicted physical harm upon another. R.C. 2911.11(A)(1). Again, Hanson admitted that he and Lucas drove to the house and went into the house to steal things. Id. at 8-9. Hanson claimed that Lucas hit Schwartz with the tire iron while he was in the kitchen. Id. at 8 and 20. He also admitted that he searched a purse in the house and that Lucas took money from it. Id. at 9. Schwartz testified at trial that she was injured as a result of the incident. Tr., 116-117. Thus, viewing the evidence in a light most favorable to the State, the evidence is sufficient to convict Hanson of the charge of aggravated burglary at Prospect Street.
 {¶ 11} Next, Hanson was convicted of aggravated burglary for the activities at Glad Street. Hanson admitted that he drove the Bronco to Glad Street. Interview, 10. He knew of the X-box in the house and the decision was made to steal it. Id. at 11. Hanson admitted that he helped Lucas to get the door open at Glad Street. Id. at 14. However, he claimed that Lucas was the one to enter the home and to stab Fisher. Id. Fisher testified that she was injured by an unknown assailant when she was stabbed multiple times. Tr., 143. Although Hanson claims he did not enter the building, Fisher testified that two different people were in the home. Id. at 136-137. Additionally, other witnesses testified that Hanson claimed he had been in the living room of the home when Fisher, who was sleeping on the couch, stirred and he then stabbed her. Id. at 341 and 360. Thus, the evidence is sufficient to find that Hanson committed aggravated burglary at the Glad Street residence.
 {¶ 12} The fourth conviction was for the charge of aggravated robbery. The State was required to prove that Hanson, while attempting or committing a theft offense, had a deadly weapon which was either brandished or used. The fifth and sixth convictions were for felonious assaults on Fisher. The State was required to prove that Hanson did knowingly cause serious physical harm to Fisher. The State presented the testimony of two former cell mates of Hanson. Both testified that Hanson had claimed he was in the house. They testified that Hanson said Fisher was sleeping nude in the living room where he and Lucas were trying to unhook the X-box. When Fisher stirred in her sleep, Hanson claimed that he stabbed her. They even testified that Hanson said the blood went every place. Id. at 339-367. Viewing this evidence in a light most favorable to the State, a juror could reasonably conclude that during the attempted robbery, Hanson possessed a deadly weapon, i.e. the knife, and that he knowingly caused serious physical harm to Fisher by stabbing her with the knife.
 {¶ 13} The next conviction was for tampering with the evidence. The State was required to prove that Hanson, knowing that an investigation was likely to ensue, concealed evidence with the purpose of impairing its value to the investigation. Here, Hanson admitted in his statement that he and Lucas dumped the Bronco into the quarry. Interview, 14. He also admitted that he gave the shoes he was wearing to Lucas for disposal. Id. at 15. Thus, the jury could conclude that Hanson tampered with the evidence.
 {¶ 14} Next, Hanson was convicted of participating in the burglary at Miami Street. The testimony at trial was that Hanson called Connie Hampton ("Hampton") and asked to borrow her car. Id. at 445. He then drove the car to Miami Street where Lucas and Foreman got out. Hanson stayed in the passenger seat of a running vehicle while Lucas and Foreman robbed the home. Id. at 396. The witness testified that when he started to walk over to the vehicle, Hanson waived him away. Id. He also testified that he saw Lucas and Foreman come out of the house carrying the guns. Id. at 393. Then all three of them drove away in the car and Hanson eventually took the car back to Hampton. Given this evidence, the jury could conclude that Hanson aided and abetted Lucas and Foreman in the commission of the burglary.
 {¶ 15} Finally, Hanson was convicted of receiving stolen property, for having the firearms in his possession. Hampton testified that Foreman, Lucas and Hanson sold the stolen guns to Jeff Reynolds in her kitchen. Id. at 452. This sale occurred later in the day after the burglary at Miami Street. Id. Thus a jury could reasonably conclude that Hanson was aiding and abetting Foreman and Lucas in the disposal of the stolen property. Viewing the evidence in a light most favorable to the State, the evidence is sufficient on every charge to support the jury's verdict of conviction. The fourth assignment of error is overruled.
 {¶ 16} The third assignment of error claims that the verdicts were against the manifest weight of the evidence.
Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends onits effect in inducing belief.'
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 514 (citing Black's Law Dictionary (6 Ed. 1990) 1594). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id. Although the appellate court may act as a thirteenth juror, it should still give due deference to the findings made by the jury.
The fact-finder, being the jury, occupies a superior positionin determining credibility. The fact-finder can hear and see aswell as observe the body language, evaluate voice inflections,observe hand gestures, perceive the interplay between the witnessand the examiner, and watch the witness's reaction to exhibitsand the like. Determining credibility from a sterile transcriptis a Herculean endeavor. A reviewing court must, therefore,accord due deference to the credibility determinations made bythe fact-finder.
 State v. Thompson (1998), 127 Ohio App.3d 511, 529,713 N.E.2d 456.
 {¶ 17} In support of Hanson's assignment of error, he claims that the testimony of the witnesses that he admitted to stabbing Fisher should not be relied upon because the witnesses were inmates with Hanson at the Multi-County Correctional Center when the conversations occurred and because some portions of their testimony contradicted that of other witnesses. However, these are matters of credibility which were determined by the jury. Given all of the evidence presented in this case, this court cannot find that the jury lost its way. Evidence was presented that Hanson either actively participated in the offenses or, at the least, aided and abetted the accomplice that committed the actual act. In addition, Hanson himself admitted to many of the offenses for which he was charged. Therefore, the third assignment of error is overruled.
 {¶ 18} In the first assignment of error, Hanson claims that trial court erred by convicting him of allied offenses. Offenses are allied if the elements of the offenses "correspond to such a degree that the commission of one crime will result in the commission of the other." State v. Rance (1999),85 Ohio St.3d 632, 636, 710 N.E.2d 699. However, where a defendant's conduct results in two or more offenses of the same or similar kind committed separately, the defendant may be convicted of all of them. R.C. 2941.25(B).
 {¶ 19} Hanson alleges that the aggravated burglary charge and the aggravated robbery charge are allied offenses. To prove aggravated burglary, the State only has to prove that the defendant trespassed into an occupied structure when someone was present with the intent to commit a crime and the offender either possessed a deadly weapon or inflicted physical harm on another. R.C. 2911.11. Aggravated robbery requires proof that the defendant attempted to commit a theft offense while having a deadly weapon or inflicting serious physical harm on another. It is possible to commit either aggravated robbery or aggravated burglary without committing the other offense. Aggravated burglary only requires the intent to commit any offense. Aggravated robbery, on the other hand requires that the offense be a theft offense. Aggravated burglary requires that the offender trespass into an occupied structure while a victim is present. Aggravated robbery has no such requirement. Thus the elements do not correspond to such a degree that the commission of one offense will automatically result in the commission of the other.
 {¶ 20} Next, Hanson claims that the two felonious assault charges are allied offenses. Under one count, Hanson was charged with using a deadly weapon to assault Fisher. The other count charged that Hanson inflicted serious physical harm. The evidence indicates that Fisher had four knife wounds to her body. One of the wounds was on her neck close to the artery and could have been life threatening. The remaining wounds were on her arm and required stitches. Because there were separate acts, each with a different animus, they are not allied offenses as defined by R.C.2941.25. State v. Cooper, 104 Ohio St.3d 293, 2004-Ohio-6553,819 N.E.2d 657. Therefore, the first assignment of error is overruled.
 {¶ 21} Hanson alleges in the second assignment of error that the trial court erred in sentencing him to consecutive sentences without complying with the statutory guidelines. "While consecutive sentences are permissible under the law, a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences." Statev. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, ¶ 21,793 N.E.2d 473.
 {¶ 22} Here, the trial court made the following findings.
The Court will make specific findings. Court finds theDefendant is not amenable to any available community controlsanctions, that the Defendant has attempted or caused or made anactual threat of physical harm to persons with a deadly weapon,and that the offenses committed were part of an organizedcriminal activity.
 The Court imposes consecutive prison sentences and makes thefollowing specific findings: That the sentences are notdisproportionate to the seriousness of the Defendant's conduct,that the sentences are necessary to protect the public fromfuture crime, and to punish the Defendant, that the harm causedby these offenses was so great that no single prison term for anyof the offenses committed as part of a single course of conductadequately reflects the seriousness of the Defendant's conduct.
 The Court specifically finds that consecutive sentences areappropriate due to the serious physical and emotional harm causedby the Defendant on these victims; that, in addition to the fact,that the Defendant made statements boasting about his conduct andthe effect on these victims.
Tr. 604-605. The trial court made all of the findings required by R.C. 2929.14. Additionally, the trial court stated that the consecutive sentences were appropriate due to the extreme harm and the boasting statements made by the defendant. Those were his reasons for imposing the sentences imposed. Thus, the requirements of R.C. 2929.19 were met. The second assignment of error is overruled.
 {¶ 23} The judgment of the Court of Common Pleas of Marion County is affirmed.
Judgment affirmed.
 Cupp, P.J., and Shaw, J., concur.