## In re RASHID.

[Cite as *In re Rashid*, 163 Ohio App.3d 515, 2005-Ohio-4851.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–040734, C–040735 and C–040736.

Decided Sept. 16, 2005.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Scott M. Heenan, Assistant Prosecuting Attorney, for appellee.

Nancy Cutler, Public Defender's Office, for appellant.

---

MARK P. PAINTER, Judge.

{¶ 1} Defendant-appellant Alghazzali Rashid appeals his convictions for kidnapping, complicity to rape, and complicity to felonious assault. Rashid, age 14 at the time, and two other boys chased and caught the victim, who was 15, held him to the ground, beat him, and then took a stick and forced the stick into the victim's anus.

{¶ 2} The trial court sentenced Rashid to one year for each conviction, to run consecutively, with the Department of Youth Services. The court then sentenced

him to six years in an adult penitentiary for each conviction, to run concurrently. We affirm.

## I. A Game of "Arrest"

{¶ 3} Rashid's codefendants, Michael Andrews and Raheem Veal, both testified for the state, as did the victim, Andrew Hummons.

{¶ 4} Andrews testified that on the evening of May 31, 2004, he, Veal, and Rashid were playing a game they had played several times before, called "arrest." In the game, the boys would take turns chasing and catching each other. After catching the "suspect," they would then "arrest" him by putting his hands behind his back and searching him.

{¶ 5} On this particular night, Hummons was visiting his cousin's house in Rashid's neighborhood. Hummons was outside with his brother and two of his cousins when Rashid and his friends began chasing Hummons's cousin, Darius. Veal testified that they could not catch Darius, so they began to chase Hummons instead. The boys quickly caught Hummons and pushed him to the ground.

{¶ 6} Andrews testified that all three boys piled on Hummons and began hitting him. After a few minutes, Andrews got up and walked a few feet away to get a stick. He said that he got the stick to hit Rashid. He testified that he hit Rashid with it and then hit Hummons with it.

{¶ 7} Veal testified that as the boys were wrestling with Hummons, Rashid told him to get another stick and to "stick it in his butt." Veal got a stick and gave it to Rashid. Both Andrews and Veal testified that Rashid took the stick and forced it into Hummons's anus. Both testified that they had started out playing a game, but realized at that point that it was no longer a game. Andrews said that he saw that Hummons was bleeding, and he, Veal, and Rashid left.

{¶ 8} Hummons testified that Rashid and the other two boys did not ask him whether he wanted to play the game of arrest, but simply began chasing him. Hummons knew all three boys from the neighborhood. After chasing and catching him, the boys pushed him to the ground, face down, and held his arms behind his back. They also punched him. Hummons testified that he struggled against the boys, asking them to quit. He told them he had asthma, but they did not stop beating him. After a while, Hummons saw Andrews get a stick. Rashid ordered Hummons to stop trying to get up and to keep his hands behind his back, or else he would hit him in the face.

{¶ 9} Hummons testified that while Veal held his left side and Andrews held his legs, Rashid pushed the stick into his anus. Hummons began screaming in pain. Meanwhile, somebody bit Hummons on the right shoulder. Andrews

eventually let go of Hummons's feet and said that he saw blood. Andrews urged the others to go, and they left Hummons behind.

{¶ 10} Hummons testified that he began blacking out, but that he made it back to his aunt's house. An ambulance was called and he was taken to Children's Hospital, where he had emergency surgery to repair several lacerations in his rectal area. Dr. Javier Gonzales, who examined Hummons that evening, testified that Hummons's injuries were very serious. According to Dr. Gonzales, without the emergency surgery, the damage to Hummons's rectal area could have resulted in severe bleeding and even death.

## II. Allied Offenses of Similar Import—the Rance–Logan Muddle

{¶ 11} In his single assignment of error, Rashid argues that the trial court erred when it convicted and sentenced him for both kidnapping and complicity to rape when the two crimes were allied offenses of similar import.

{¶ 12} Where the conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the defendant may be convicted of only one of the offenses.[1] But where the conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the defendant may be convicted of all the offenses.[2]

{¶ 13} Rashid argues that the kidnapping of Hummons and the complicity to rape him were not separate acts. That is, he contends that there were not separate animuses for the two offenses, meaning that he could not be convicted of both crimes.

{¶ 14} In *State v. Logan*, the Ohio Supreme Court adopted guidelines for courts to determine whether kidnapping and another offense of the same or similar kind have been committed with a separate animus.[3] The court held, "Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions."[4]

---

1. R.C. 2941.25(A).

2. R.C. 2941.25(B).

3. *State v. Logan* (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345.

4. Id. at syllabus.

{¶ 15} The court also stated that where the victim, as a result of any restraint or movement, has been subjected to a substantial increase in the risk of harm separate from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.[5]

{¶ 16} In *Logan*, the court determined the defendant did not have a separate animus, defined as an immediate motive, for kidnapping and then raping the victim when he forced her into an alley and down a flight of stairs before raping her.[6] The court concluded that the restraint and movement of the victim had no significance apart from facilitating the rape, and that the limited restraint and movement did not substantially increase her risk of harm.[7] Therefore, in that case, kidnapping and rape were allied offenses of similar import, and the defendant could be convicted only of one offense.

{¶ 17} Twenty years after the Ohio Supreme Court decided *Logan*, in *State v. Rance*,[8] the court again considered how to establish whether offenses are allied offenses of similar import. The court determined that if the elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.[9] The court decided that courts should examine the statutory elements of the offenses in the abstract, rather than consider the particular facts of a case.[10]

{¶ 18} But the *Rance* analysis was immediately put into doubt when the Ohio Supreme Court decided *State v. Fears*[11] several months after *Rance*.

{¶ 19} In *Fears*, the defendant challenged his sentence, arguing that by failing to merge the specifications for kidnapping and aggravated robbery, the trial court had erroneously considered duplicative aggravating circumstances. The court agreed with the defendant, relying on *State v. Jenkins*,[12] which had held that aggravating circumstances involving allied offenses of similar import could be considered duplicative.[13]

---

5. Id.

6. Id. at 135, 397 N.E.2d 1345.

7. Id.

8. *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699.

9. Id. at 636, 710 N.E.2d 699.

10. Id.

11. *State v. Fears* (1999), 86 Ohio St.3d 329, 715 N.E.2d 136.

12. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 198, 15 OBR 311, 473 N.E.2d 264.

13. *Fears*, supra, at 343, 715 N.E.2d 136.

{¶ 20} The *Fears* court ignored its directive in *Rance* that when a court must compare criminal elements in order to resolve a case, the court should consider the statutory elements of the offenses in the abstract and not consider the particular facts of the case. The *Fears* court determined that, on the facts of that case, there was no separate animus for the offenses of kidnapping and aggravated robbery and held that the two specifications should have been merged.[14]

{¶ 21} In *State v. Grant*,[15] we discussed the impact of *Fears* on *Rance*. We stated, "[W]hile we question what happened in *Fears* to the two-step analysis set forth in *State v. Rance*, especially a comparison of elements of the offenses in the abstract, we are constrained by the court's analysis * * *. It seems that the court has implicitly overruled *Rance*."[16]

{¶ 22} One year later, in *State v. Palmer*,[17] we acknowledged our conclusion in *Grant* that *Fears* had implicitly overruled *Rance*. But we then determined that because the Ohio Supreme Court had not explicitly overruled *Rance* and had continued to use *Rance*'s strict comparison-of-the-elements test without citation of *Fears*,[18] *Rance* was still good law.[19] (Actually, it was never *good* law, but it might have been *the* law.)

{¶ 23} This author dissented in *Palmer*, believing still that not only was the *Rance* decision intuitively and legally wrong, but that the Supreme Court had overruled it, albeit by implication, in *State v. Fears*.[20]

{¶ 24} Though the Ohio Supreme Court has still not explicitly overruled *Rance*, a recent decision indicates that the *Rance* test is no longer the correct analysis for determining whether offenses are allied offenses of similar import.

{¶ 25} In *State v. Adams*, decided in November 2004, the Ohio Supreme Court considered whether the defendant's convictions for kidnapping and rape constituted allied offenses of similar import under R.C. 2941.25.[21] The court did not even

---

14. Id. at 344, 715 N.E.2d 136.

15. *State v. Grant* (Mar. 23, 2001), 1st Dist. No. C–971001.

16. Id.

17. *State v. Palmer*, 148 Ohio App.3d 246, 2002-Ohio-3536, 772 N.E.2d 726.

18. *State v. Childs* (2000), 88 Ohio St.3d 558, 561–562, 728 N.E.2d 379.

19. *State v. Palmer*, supra, at ¶ 12–13; see, also, *State v. Walker*, 1st Dist. No. C–030159, 2003-Ohio-7106, 2003 WL 23018572, at ¶ 18; *State v. Hendrickson*, 2nd Dist. No. C.A. 19045, 2003-Ohio-611, 2003 WL 264339, at ¶ 32–34.

20. *Palmer*, supra, at ¶ 17 (Painter, J., dissenting).

21. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, at ¶ 89.

mention *Rance,* but instead cited and applied the test announced in *Logan.*[22] The court discussed the particular facts of the case and determined that because there was no evidence that the defendant had moved or restrained the victim in any way other than what was necessary to rape and kill her, there was no separate animus to support the kidnapping conviction.[23] The court consequently vacated the defendant's kidnapping conviction.[24]

{¶ 26} In *State v. Cooper,*[25] decided in December 2004, the Ohio Supreme Court considered the lower courts' holdings that involuntary manslaughter and child endangering did not constitute allied offenses of similar import under R.C. 2941.25. The court cited the *Rance* test but also cited *Logan* and emphasized that "our approach has been to analyze the particular facts of each case before us to determine whether the acts or animus were separate." [26]

{¶ 27} The court ultimately concluded that because the state had not relied upon the same conduct of the defendant to support two separate convictions, R.C. 2941.25 was not even implicated. Holding that the issue of whether there were allied offenses of similar import did not exist, the court stated, "Our decision does not alter our holding in *Rance,* because *Rance* is not implicated by the facts of this case." [27] Go figure.

{¶ 28} While *Cooper* could imply that *Rance* is still good law in some cases, we conclude that *Adams,* which did not even cite the *Rance* test in a case involving kidnapping and rape convictions, is a clear enough statement that the *Logan* test, and not the *Rance* test, is the proper way to analyze whether kidnapping and another crime constitute allied offenses of similar import.[28]

### III.  Rance and Logan Tests

{¶ 29} But for Rashid, the result in this case is the same under both the *Rance* and the *Logan* tests.

{¶ 30} The *Rance* test requires a strict textual comparison of the statutory elements of kidnapping and rape, without reference to the particular facts of the

---

22.  Id. at ¶ 90.

23.  Id. at ¶ 93–94.

24.  Id. at ¶ 95.

25.  *State v. Cooper,* 104 Ohio St.3d 293, 2004-Ohio-6553, 819 N.E.2d 657.

26.  Id. at ¶ 19.

27.  Id. at ¶ 29.

28.  *State v. Bunch,* 7th Dist. No. 02 CA 196, 2005-Ohio-3309, 2005 WL 1523844, at ¶ 204.

case, to determine whether they correspond to such a degree that the commission of one crime will result in the commission of the other.

{¶ 31} Kidnapping is defined as follows: "No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * To terrorize, or to inflict serious physical harm on the victim or another." [29]

{¶ 32} Rashid was also convicted of complicity to rape. One who aids and abets another in committing an offense is guilty of complicity.[30] Rape is defined as follows: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." [31]

{¶ 33} Clearly, by a comparison of only the statutory elements of kidnapping and rape, one could commit kidnapping without committing rape. Under the *Rance* analysis, Rashid could never successfully claim, regardless of the facts of his case, that kidnapping and rape are allied offenses of similar import. But of course that would ignore *Adams* and *Logan*.

{¶ 34} Applying the *Logan* test, we must examine the specific facts of this case. We must decide whether Rashid's restraint of Hummons was merely incidental to the rape. That is, was there a significance, independent of the rape, to Rashid's restraint of Hummons? Furthermore, we must determine whether Rashid's restraint of Hummons subjected Hummons to a substantial risk of harm separate and apart from the rape.

{¶ 35} All three attackers, Rashid, Andrews, and Veal, testified that they had played the game of arrest prior to the evening that Hummons was raped. Andrews testified that he believed they were just playing when they pursued and captured Hummons. Andrews also testified that he did not realize what Rashid was going to do with the stick and that once Rashid penetrated Hummons with the stick, he realized they were no longer playing a game.

{¶ 36} Veal testified that "arresting" Hummons started out as a game, but then stopped being a game at some point. He said that they were "playing," that is, holding Hummons down while punching him for five or ten minutes before Andrews retrieved a stick. Veal also stated that he and the other boys had played the game of arrest numerous times without anybody putting a stick into the arrestee's anus.

---

**29.** R.C. 2905.01(A)(3).

**30.** R.C. 2923.03(A)(2).

**31.** R.C. 2907.02(A)(2).

{¶ 37} Under these facts, we conclude that Rashid's restraint of Hummons was not merely incidental to raping him. The boys played arrest numerous times before, restraining the arrestee and punching him, without raping him. The restraining and beating of Hummons had significance separate from the consequent rape and was not done merely to facilitate the rape. Furthermore, the restraint and beating of Hummons did subject him to a substantial risk of harm separate and apart from the rape.

{¶ 38} We conclude that Rashid had a separate animus for each offense and committed distinct and separate acts. Rashid helped to restrain Hummons while punching him. This conduct was consistent with the game of arrest and constituted the kidnapping of Hummons. Rashid apparently then got the idea to sodomize Hummons with a stick. Surprising even his friends, Rashid proceeded to rape Hummons with the stick, an act separate from the prior restraint and beating of Hummons.

{¶ 39} Thus, even under the *Logan* test, Rashid committed separate acts with separate animuses and could be convicted of crimes for both acts. In this case, the kidnapping and the rape were not allied offenses of similar import.

{¶ 40} Because Rashid's convictions for kidnapping and complicity to rape did not involve allied offenses of similar import, we overrule his assignment of error and affirm the trial court's judgment.

Judgment affirmed.

DOAN, P.J., and HILDEBRANDT, J., concur.