OPINION *Page 2 
{¶ 1} The defendant-appellant, Stephen D. McKitrick, appeals the judgment of the Hancock County Common Pleas Court sentencing him to an aggregate prison term of 12 years.
 {¶ 2} On July 19, 2002, McKitrick went to the home of Maxine Beard, a 72 year-old widow who lived alone in a rural farmhouse. McKitrick began knocking on windows and peered over a curtain into Beard's bedroom. Beard picked up the phone to call the sheriff, but the phone would not work. McKitrick then broke a window in the front of the home, and when Beard tried to escape, McKitrick caught her, took her purse and car keys, and assaulted her. Beard was able to temporarily escape from McKitrick and ring a dinner bell on the west side of the home, in hopes that somebody would be alerted and come to her assistance. However, McKitrick caught her at the dinner bell and continued to assault her as he dragged her to her car. McKitrick kept talking about taking a ride and indicated that he needed money because he had visitation with his son that day. McKitrick took an undetermined amount of cash from Beard's purse and demanded that she write him a check for $1,000. He then reduced the amount to $900. Beard negotiated with McKitrick and agreed to write the check in exchange for her car keys. Beard placated McKitrick with compliments and by talking about his son and gave him the check. McKitrick returned Beard's car keys and told her not to *Page 3 
report the incident. Beard then got in her car and drove directly to the Hancock County Sheriffs Office, where she reported the incident.
 {¶ 3} On July 23, 2002, the Hancock County Grand Jury indicted McKitrick on one count of kidnapping, a violation of R.C. 2905.01(A)(2), a first-degree felony, and one count of robbery, a violation of R.C.2911.02(A)(2), a second-degree felony. At arraignment, McKitrick pled not guilty, and the state provided discovery to the defendant. A jury trial was scheduled to begin on December 16, 2002. However, on that date, the defendant advised the court that he had reached a plea agreement with the state, and the trial date was vacated. On January 6, 2003, the trial court held a change of plea hearing. McKitrick withdrew his previously tendered pleas of not guilty and entered pleas of guilty to both offenses as charged in the indictment. The court continued the case for sentencing and ordered the completion of a pre-sentence investigation report, which the state requested pursuant to the plea agreement.
 {¶ 4} On March 26, 2003, the trial court held a sentencing hearing. Defense counsel argued that the kidnapping and robbery offenses were allied offenses of similar import and were required to be merged for purposes of sentencing; however, the trial court determined that the elements of the offenses did not align and therefore, they were not allied offenses of similar import. The court ordered McKitrick to pay restitution and to serve consecutive sentences of *Page 4 
eight years for the kidnapping and four years for the robbery; an aggregate sentence of 12 years. McKitrick appealed the judgment of the trial court, arguing that the record did not support the imposition of consecutive sentences. This Court affirmed the sentence. State v.McKitrick, 3d Dist. No. 5-03-06, 2003-Ohio-5126, appeal not allowed by101 Ohio St.3d 1422, 2004-Ohio-123, 802 N.E.2d 154. McKitrick later requested that this Court reopen his case, claiming ineffective assistance of appellate counsel. We denied McKitrick's request, and the Ohio Supreme Court declined to hear the appeal. State v. McKitrick,102 Ohio St.3d 1424, 2004-Ohio-2003, 807 N.E.2d 368.
 {¶ 5} McKitrick then filed a petition for habeas corpus in the federal district court for the Northern District of Ohio, Western Division. McKitrick claimed he was wrongly imprisoned because his appellate counsel was ineffective for failing to raise on direct appeal the issue of allied offenses of similar import. The district court conditionally granted the writ. McKitrick v. Jeffries (N.D.Ohio 1997), case number 3:05 CV 637. The court agreed with McKitrick that appellate counsel was ineffective for her failure to raise the issue of allied offenses of similar import on direct appeal; that the trial court had not properly evaluated whether the offenses were allied offenses of similar import; and that McKitrick would be released from prison if the trial court did not re-sentence him within 90 days of the district court's order, which was dated May 10, 2006. Id. *Page 5 
 {¶ 6} On August 4, 2006, the trial court conducted an evidentiary hearing to determine whether the robbery and kidnapping were allied offenses of similar import. The court continued the matter until August 9, 2006, at which time the court analyzed the evidence and relevant case law and concluded that the offenses were committed with a separate animus and therefore did not merge. Since the district court had remanded the matter for "re-sentencing," the trial court re-sentenced McKitrick under the authority of State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, imposing the same aggregate 12-year sentence. McKitrick appeals the judgment of the trial court raising two assignments of error for our review.
 First Assignment of Error The trial court erred when it imposed multiple prison terms for Mr. McKitrick's kidnapping and robbery convictions, when those offenses constituted allied offenses of similar import, and were not committed separately or with a separate animus. This error contravened R.C. 2941.25 and the Double Jeopardy Clauses of the state and federal constitutions.
 Second Assignment of Error The trial court erred when it imposed nonminimum, consecutive prison terms upon Mr. McKitrick, a person who had never before served a prison term, as nonminimum, consecutive prison terms contravened the Sixth Amendment to the United States Constitution.
 {¶ 7} In the first assignment of error, McKitrick contends that the kidnapping and robbery occurred with a singular animus: to obtain money. As *Page 6 
such, he argues that as a result of being sentenced for both offenses, he has been placed in double jeopardy. In response, the state contends that the kidnapping continued beyond the robbery. The state argues the robbery was complete when McKitrick took the purse and removed the money from it. The state argues that Beard escaped and rang the dinner bell after McKitrick took the cash from her purse, and therefore, the events that occurred after he took the money constituted a separate kidnapping. The state apparently contends that the robbery did not include the $900 check, as Beard used the check to negotiate for her car keys and her safety.
 {¶ 8} Both the state and federal constitutions protect citizens from "successive prosecutions and cumulative punishments for the `same offense.'" State v. Rance, 85 Ohio St.3d 632, 634, 1999-Ohio-291,710 N.E.2d 699, quoting State v. Moss (1982), 69 Ohio St.2d 515, 518,433 N.E.2d 181. This case focuses on whether the trial court imposed cumulative sentences. The General Assembly "may prescribe the imposition of cumulative punishments for crimes that constitute the same offense * * * without violating the federal protection against double jeopardy or corresponding provisions of a state's constitution." Rance, at 634, citing Albernaz v. United States (1981), 450 U.S. 333, 344,101 S.Ct. 1137, 67 L.Ed.2d 275; State v. Bickerstaff (1984), 10 Ohio St.3d 62, 65,461 N.E.2d 892. R.C. 2941.25 was enacted to allow cumulative punishments if the multiple *Page 7 
offenses are of dissimilar import. Id. at 636, citing R.C. 2941.25(B);State v. Blankenship (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816. However, "if a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both * * * ." Id., citing R.C. 2941.25(B); State v. Jones, 78 Ohio St.3d 12, 13-14,1997-Ohio-38, 676 N.E.2d 80.
 {¶ 9} To determine if the offenses are of similar import, the Supreme Court has stated:
 "In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step."
Jones, at 14, quoting Blankenship, at 117. McKitrick was charged with and pled guilty to one count of kidnapping under R.C. 2905.01(A)(2), which states:
 No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * To facilitate the commission of any felony or flight thereafter * * * .
 {¶ 10} McKitrick was also charged with and pled guilty to one count of robbery under R.C. 2911.02(A)(2), which states:
 No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * * Inflict, attempt to inflict, or threaten to inflict physical harm on another * * * . *Page 8 
 {¶ 11} The Supreme Court has required that we compare the elements of the offenses in the abstract, that is, by the elements established by the General Assembly, and not based on the facts of each case.Rance, at 639. However, the court has previously held that kidnapping merges with robbery "unless the offenses were committed with a separate animus." State v. Fears, 86 Ohio St.3d 329, 344, 1999-Ohio-111,715 N.E.2d 136, citing State v. Jenkins (1984), 15 Ohio St.3d 164, 198,473 N.E.2d 264.
 {¶ 12} The "separate animus" exception leads us to the second part of the analysis. ?`In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.'" (Emphasis sic). Jones, at 14, quotingBlankenship at 117. Therefore, if the kidnapping is "merely incidental" to the other crime (robbery), there is no separate animus.Fears, at 344, citing State v. Logan (1979), 60 Ohio St.2d 126,397 N.E.2d 1345, at syllabus. "However, where the restraint is prolonged, the confinement is secretive, or the movement is substantial, there exists a separate animus as to each offense." Id., citingLogan, at syllabus. The Supreme Court has defined "animus" as the "same purpose, intent, or motive." Blankenship, at 119. With *Page 9 
these standards in mind, we must review the record de novo. SeeState v. Cox, 4th Dist. No. 02CA751, 2003-Ohio-1935.
 {¶ 13} The Supreme Court has also held that an offender may not benefit from the protection provided by R.C. 2941.25(A) unless he or she shows ?`that the prosecution has relied upon the same conduct to supportboth offenses charged.'" (Emphasis sic). State v. Cooper,104 Ohio St.3d 293, 2004-Ohio-6553, 819 N.E.2d 657, quoting Logan, at 128. Therefore, we must review the record to determine whether the state relied on the same conduct to support both the kidnapping and robbery charges.
 {¶ 14} The state apparently provided open file discovery to the defendant, and also filed responses to McKitrick's discovery request. The pertinent facts center around a very limited amount of time; when the purse was taken from Beard, when the money was removed from the purse, the movement and assault of Beard by McKitrick, the writing of the check, and Beard's final release by or escape from McKitrick.
 {¶ 15} In discovery, the state filed the initial report created by the Hancock County Sheriffs Office. In that report, the deputy stated that Beard had revealed the following facts: as Beard was moving toward the back door to escape the home, she heard the glass break in the front of the house; as Beard tried to exit the home, McKitrick caught her and took her purse and car keys; McKitrick chastised *Page 10 
her for not answering her phone and indicated that he needed money; McKitrick rifled through her purse and removed her cash; Beard escaped and rang the dinner bell; McKitrick caught her by the dinner bell and assaulted her again, dragging her toward her car; McKitrick indicated that Beard did not have enough money and demanded a check for $1,000, then reduced the amount to $900; Beard wrote the check and agreed to give it to him in exchange for her car keys; McKitrick gave her the car keys, took the check, and told her not to do anything "crazy" by way of reporting the offense or he would inflict physical harm on her.
 {¶ 16} The deputy also asked Beard to make a written statement, which she did. In her written statement, Beard indicated that as she tried to escape through the back door, McKitrick caught her and grabbed her purse and keys. She wrote that he wanted her to "take a ride" with him, but she refused. She managed to escape and run to the west side of the house where she rang the dinner bell. McKitrick caught her by the dinner bell and assaulted her, dragging her to her car. McKitrick stated that he needed money, so he went through her purse, took her cash, complained that she did not have enough cash and demanded that she write him a check for $1,000. McKitrick then reduced the amount of the check to $900. Beard wrote the check and gave it to him in exchange for her car keys. McKitrick told Beard that if she "got crazy and reported this to the sheriff he'd really hurt [her], that [she would] really be sorry." *Page 11 
 {¶ 17} In the sheriff's investigative report, completed by Detective Tim Grayson, he indicated that he spoke with Beard later in the day on July 19, 2002 (after the initial report and after she wrote her statement). Grayson's report indicates that McKitrick took Beard's purse and keys when she tried to exit the home. Beard was able to escape and ring the dinner bell, but McKitrick again caught her. McKitrick assaulted Beard and took her to her car. Near the car, McKitrick looked through the purse and took her cash. McKitrick demanded that Beard write a check because she did not have enough cash. Beard wrote the check in exchange for her car keys. Finally, the affidavits to support search warrants indicated that McKitrick did not take the money from Beard's purse until after she rang the dinner bell and until after he dragged her to her car.
 {¶ 18} On August 4, 2006, the court held an evidentiary hearing to determine if the kidnapping and robbery were allied offenses of similar import. Deputy Bell, who wrote the initial sheriff's report, testified about what Beard had told him, and Deputy May's testimony essentially corroborated that Beard's window had been smashed and her phone lines had been cut. The state submitted into evidence a copy of Beard's handwritten statement, and a copy of the Sheriff's Report was marked and admitted as Court's Exhibit 2. *Page 12 
 {¶ 19} The trial court relied heavily on Beard's written report in reaching its decision and determined that the offenses were not allied offenses of similar import. Specifically, the court stated:
 I think there is strong evidence and most important that from the victim, that the robbery was completed, in my judgment after reviewing that, when Mr. McKitrick pursued her, being Ms. Beard, and took her purse. And perhaps the latest, took the money from her purse. And the critical point that this Court look[s] at then is what happened afterwards. After he accomplished that.
 Perhaps I should note parenthetically, I think the argument holds, even if I look to his argument after the check was written, because we have this strange set of circumstances where Mr. McKitrick took her purse, took her money out of the purse, found it to be insufficient, and then forced her to write a check to him which he later cashed. But I believe one could argue, and I think it's fair to say, that the robbery was completed when he took the purse. Certainly when he took the money. Even if we were to argue that the robbery was not completed until he took the check, I think there's information evidence would suggests that these crimes were committed with separate animus.
 Why does the Court believe that? If we take the position that when the purse was taken the robbery was completed, there was additional conduct that was engaged in by McKitrick, including chases her down after she broke free, restraining her, striking her and threatening her, continuing her restraining confinement. That conduct occurred after he took the money. And to some degree, based on her own statement, occurred after the check was written.
 So it appears to me much of the conduct of Mr. McKitrick and restraining of the victim occurred so she could not report the crime. * * *.
(Sentencing Tr., Oct. 30, 2006, at 10-11). *Page 13 
 {¶ 20} McKitrick's main objective was to get money because he had visitation with his son that day, and he apparently had other debts or expenses that he needed to pay on the morning of the offenses. McKitrick cashed the check soon after getting it, and by the time deputies located him later in the day on July 19, 2002, McKitrick had spent approximately $400.
 {¶ 21} The state's contentions have changed over time in this case. At the change of plea hearing, the assistant prosecutor stated:
 The conduct of the Defendant constituting the offense of kidnapping, in that he forcefully restrained Miss Beard from her liberty by precluding her from leaving the residence, by grabbing her, dragging her away from the bell where she was attempting to summon help, and he did this in order to facilitate the robbery offense where he threatened Miss Beard and forced her to write the check for him after he took the money from the purse. Arguably the robbery was complete at the time he took the money from the purse. Arguably the kidnapping was complete before he ever got as far as demanding the money.
(Hearing Tr., Oct. 30, 2006, at 23:5-16). However, at the August 4, 2006 evidentiary hearing, the state argued that McKitrick prevented Beard from leaving the home, took her purse, and took the cash out of the purse before Beard escaped to ring the dinner bell. The state argues McKitrick's abuse and movement of Beard after that point constitute the kidnapping, which continued past the end of the robbery. Despite the changing theory of the case, the evidence shows that the state is relying on different conduct to prove its case. Regardless of whether McKitrick took the money from Beard's purse before or after she rang the dinner *Page 14 
bell, he continued to restrain her liberty. While McKitrick wanted additional money (hence the demand for the check), he also wanted to prevent Beard from reporting the offense to the sheriff. McKitrick had earlier cut the phone lines to the farmhouse. After taking Beard's cash, he did not return her car keys, and clearly, she was unable to escape him on foot. The state relied on this continued restraint, which extended beyond the robbery, to prove the kidnapping claim.
 {¶ 22} On this record, and constrained by the Supreme Court's holdings in Rance and Cooper, we must hold that the offenses of robbery and kidnapping were not allied offenses of similar import. The first assignment of error is overruled.
 {¶ 23} In the second assignment of error, McKitrick contends the trial court erred in sentencing him to non-minimum, consecutive prison terms under State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, since he had never before served a prison term. Essentially, McKitrick contends that the Supreme Court's holding in Foster is unconstitutional because it violates the ex post facto, due process, and separation of powers clauses.
 {¶ 24} We are required to follow the precedent established by the United States Supreme Court and the Ohio Supreme Court. As such, we find no error in the trial court's decision to impose an aggregate prison term of twelve years.
 {¶ 25} We have previously considered and rejected the appellant's arguments that Foster violates due process and the ex post facto clause.State v. *Page 15 McGhee, 3d Dist. No. 17-06-05, 2006-Ohio-5162. We note that McKitrick committed these offenses subsequent to the United States Supreme Court's holding in Apprendi v. New Jersey (2000), 530 U.S. 466, 490,120 S.Ct. 2348, 147 L.Ed.2d 435, which provided notice that a major shift in sentencing was likely to occur and supports our conclusion inMcGhee that the remedy announced in Foster does not violate due process or ex post facto principles. Likewise, the sentencing ranges for felony offenses have remained unchanged, so McKitrick had notice of the potential sentences for each offense.
 {¶ 26} Furthermore, the Ohio State Public Defender attempted to appeal the unanimous Foster decision to the United States Supreme Court. However, on October 16, 1006, the court denied the petition for writ of certiorari. Foster v. Ohio (2006), 127 S.Ct. 442, 166 L.Ed.2d 314. Likewise, the Ohio Supreme Court has twice denied review of our decision in McGhee. State v. McGhee, 112 Ohio St.3d 1491, 2007-Ohio-724,862 N.E.2d 118, reconsideration denied in 113 Ohio St.3d 1470,2007-Ohio-1722, 864 N.E.2d 655.
 {¶ 27} We have also previously considered and rejected McKitrick's argument that the holding in Foster violates the separation of powers doctrine. State v. Daniels, 3d Dist. No. 12-06-05, 2007-Ohio-2281, at ¶ 14-17, citing State v. Elswick, 11th Dist. No. 2006-L-075,2006-Ohio-7011; R.C. 1.50 ("Under R.C. 1.50, the Ohio Supreme Court had the authority to sever the provisions found *Page 16 
unconstitutional. * * * Consequently, the Ohio Supreme Court did not violate the principle of separation of powers."). The second assignment of error is overruled.
 {¶ 28} The judgment of the Hancock County Common Pleas Court is affirmed.
Judgment affirmed.
 ROGERS, P.J., and SHAW, J., concur *Page 1