[Cite as *State v. Corker*, **2013-Ohio-5446.**]

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 13AP-264 |
| v. | : | (C.P.C. No. 12CR-04-1955) |
| Ja Michael Corker, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |
| | : | |
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 13AP-265 |
| v. | : | (C.P.C. No. 12CR-05-2343) |
| Ja Michael Corker, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |
| | : | |
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 13AP-266 |
| v. | : | (C.P.C. No. 12CR-05-2344) |
| Ja Michael Corker, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

# D E C I S I O N

**Rendered on December 12, 2013**

*Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee.

*Stephen Dehnart*, for appellant.

APPEALS from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1}    Defendant-appellant, Ja Michael Corker ("defendant"), appeals from the judgment of the Franklin County Court of Common Pleas convicting him of aggravated robbery, kidnapping, two counts of robbery, four count of felonious assault, and a firearm specification for each conviction.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}    In the spring of 2012, defendant was the subject of three indictments handed down by the Franklin County Grand Jury, arising out of three separate incidents that occurred in early 2012.[1]

{¶ 3}    The first incident took place on January 1, 2012, involving victim Larry Fraganato.  At approximately 8:30 p.m., Fraganato arrived at the Sunoco gas station on Georgesville Road, in Columbus, Ohio.  As he entered the store to buy a drink, Fraganato noticed two men standing beside a white Impala.  According to Fraganato, the two men appeared to be waiting for someone to jump start the car.

{¶ 4}    When Fraganato exited the building after paying for his gas, the two men approached him and asked for his help.  Fraganato attempted to help the two men jump start the car but his efforts were unsuccessful.  As Fraganato attempted to drive away, one of the men, later identified as defendant, jumped into the passenger seat brandishing a handgun.  According to Fraganato, defendant ordered him to drive away from the gas station as the other man followed in the Impala.

{¶ 5}    Fraganato testified that he was forced to drive a short distance down the road and to take a right-hand turn onto Industrial Boulevard.  Shortly after making the turn onto Oakwood, defendant ordered Fraganato to stop the vehicle at Nationwide Boulevard and to empty his pockets.  Defendant took Fraganato's cell phone, a play station portable game, and $30 to $40.  At that point, defendant pressed the gun to

---

[1] Case Nos. 12CR-04-1955, 12CR-05-2343, and 12CR-05-2344.

Fraganato's head and demanded his wallet. When Fraganato told defendant he did not have his wallet with him, defendant became angry. As defendant fled the scene, he threatened to kill Fraganato and his family if he went to police.

{¶ 6} The second incident, also involving Fraganato, occurred on February 3, 2012, in the Walmart store on Georgesville Road, in Columbus, Ohio. Fraganato testified that he and his girlfriend, Dominique Nickel, and their two children, were sitting in the Subway restaurant located inside the Walmart store when he saw defendant and some of defendant's friends enter the store and walk by the restaurant. Fraganato believed that defendant had recognized him.

{¶ 7} Fraganato told his girlfriend to take the kids to the car and to call police. Fraganato also called the police to report that the man who had robbed him was in the store. When Fraganato confronted defendant in the Walmart store, a fight ensued. Fraganato sustained a blow to the head from one of defendant's friends, and a slight laceration on his arm from a box cutter wielded by defendant. Defendant ran from the store and escaped police. Surveillance video from the store reveals that defendant was wearing a black jacket with a distinctive white design on the back.

{¶ 8} On February 4, 2012, just hours after the Walmart incident, defendant was involved in a shooting at Burnzie's Bar. According to witnesses, a fight between two women erupted just outside the entrance of the bar and that the fight quickly escalated into a melee involving as many as ten individuals. As the brawl moved out onto the sidewalk, defendant was seen running away from a group of men. Stephanie Clark testified that when she saw the same men running back toward the bar, several shots rang out. Clark sustained a gunshot wound to her right leg, and Katrina Sparks took a bullet in her left shoulder. Both victims survived the attack and Clark testified for the prosecution at trial. Burnzie's Bar co-owner, Wayne Scanlon, testified that he saw defendant fire several shots at a group of men as they ran back toward the bar. Witnesses described the shooter as a black man wearing a black jacket with a distinctive design on the back. Much of the incident was captured on video surveillance equipment, and the footage was shown to the jury at trial.

{¶ 9} On April 19, 2012, a Franklin County Grand Jury indicted defendant on two counts of felonious assault arising out of the February 4, 2012 shooting at Burnzie's Bar.

Each count contained a firearm specification. The grand jury handed down two more indictments on May 10, 2012, charging defendant with the following offenses: felonious assault, kidnapping, aggravated robbery, and two counts of robbery in connection with the January 1, 2012 incident; and felonious assault in connection with the February 3, 2012 incident at Walmart. Each count contained a firearm specification.

{¶ 10} The jury found defendant guilty of all charges. Following a sentencing hearing on February 28, 2013, the trial court sentenced defendant to a total of 38 years in prison, which includes a two-year term for an unrelated conviction.

## II. ASSIGNMENTS OF ERROR

{¶ 11} Defendant filed his appeals to this court, assigning the following assignments of error:

> [I.] The trial court erred in joining 12CR-1955 with 12CR-2343 and 12CR-2344 where there were no common victims, were not part of the same act or transaction and were not part of a common scheme or plan or course of criminal conduct. This error deprived appellant of due process of law under the U.S. Constitution and Ohio Constitution.
>
> [II.] The trial court erred in entering multiple convictions and sentences for offenses that were allied offenses of similar import committed with a single animus.
>
> [III.] The trial court erred in imposing consecutive sentences without making the necessary findings in violation of O.R.C. 2929.14(C)(4).

## III. STANDARD OF REVIEW

{¶ 12} We typically review a trial court's decision on joinder of offenses for trial under an abuse of discretion standard. *State v. Banks*, 10th Dist. No. 09AP-1087, 2010-Ohio-5714, ¶ 30, citing *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128. However, where the defendant fails to object to improper joinder at trial, the error is waived for purposes of appeal. *State v. Cameron*, 10th Dist. No. 09AP-56, 2009-Ohio-6479, ¶ 37, citing *State v. Burks,* 10th Dist. No. 07AP-553, 2008-Ohio-2463, ¶ 50. "Plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper [joinder]." *State v. McGee*, 8th

Dist. No. 92019, 2010-Ohio-2081, ¶ 24, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996).

{¶ 13} Although defendant objected to the joinder of indictments prior to trial, he failed to move the trial court to sever the indictments either at the close of the State's case-in-chief or at the close of all evidence. Thus, defendant waived all but plain error with regard to improper joinder. *Id. See also State v. Shipley,* 9th Dist. No. 03CA008275, 2004-Ohio-434.

## IV. JOINDER OF INDICTMENTS

{¶ 14} In his first assignment of error, defendant contends that the trial court committed plain error when it joined the indictment arising from the Burnzie's Bar incident with the two indictments arising from the crimes against Fraganato. We disagree.

{¶ 15} "The court may order two or more indictments * * * to be tried together, if the offenses * * * could have been joined in a single indictment." Crim.R. 13. Crim.R. 8(A) states that two or more offenses may be charged in the same indictment if they are of "the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." *State v. Sullivan*, 10th Dist. No. 10AP-997, 2011-Ohio-6384, ¶ 21. The law favors joining multiple offenses in a single trial because it conserves judicial and prosecutorial time, lessens the considerable expenses associated with multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of inconsistent results in successive trials before different juries. *Id.*, citing *State v. Walters,* 10th Dist. No. 06AP-693, 2007-Ohio-5554, ¶ 21.

### A. Same or Similar Character

{¶ 16} The threshold argument in this case is whether the indicted offenses arising from the Burnzie's Bar incident and the indicted offenses arising out of defendant's crimes against Fraganato are of the "same or similar character."[2] We believe the offenses charged in the indictments are of the same or similar character.

---

[2] Appellant concedes that the two indictments arising from the offenses committed against Fraganato are of similar character and that the two indictments were properly joined for trial.

{¶ 17} In this instance, defendant committed all of the charged offenses within a short period of time. In fact, the incident at Burnzie's Bar occurred just one day after the incident at Walmart. All three incidents occurred at business establishments, during business hours. Both the Burnzie's Bar and the Walmart incidents arise from physical altercations during which defendant resorted to the use of a weapon. Additionally, defendant was charged with felonious assault with a handgun specification in both the Burnzie's Bar incident and the incident that began at Sunoco. And, in each of the incidents, witnesses identified defendant as wearing a black jacket with a distinctive design.

{¶ 18} There is no doubt that the joinder of the indictments for a single trial conserved judicial and prosecutorial resources, lessened the expenses associated with multiple trials, and minimized the possibility of inconsistent results in successive trials before different juries. While the specific crimes charged in the indictments are not identical and the circumstances surrounding the charged offenses differ in many respects, we find that there are enough similarities to justify the joinder of the indictments under Crim.R. 13 and 8(A). Accordingly, we find that the initial joinder of the indictments for trial was not plain error.

### B. Defendant's Claim of Prejudice

{¶ 19} An accused may move the trial court, pursuant to Crim.R. 14, to sever counts of an indictment on the grounds that he or she will be prejudiced by the joinder of multiple offenses. *LaMar* at ¶ 49. And, "[i]f it appears that a defendant * * * is prejudiced by a joinder of offenses * * * in an indictment, * * * the court shall order * * * separate trial of counts* * * or provide such other relief as justice requires." Crim.R. 14. Additionally, inasmuch as defendant did not move the court to sever the indictments, we will reverse the decision of the trial court only if there is plain error.

{¶ 20} As a general rule, in order for the accused to establish that the trial court erred by refusing to sever the indictments, the accused must show "(1) that his rights were prejudiced, (2) 'that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial,' and (3) 'that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial.' " *McGee,*

quoting *State v. Schaim,* 65 Ohio St.3d 51, 59 (1992), citing *State v. Torres*, 66 Ohio St.2d 340 (1981), syllabus.

{¶ 21} Defendant's only claim of prejudice in this case is his bare assertion that he might have testified in his own defense as to the offenses charged in one of the indictments had they not been joined for trial.  Defendant does not specify which of the indictments his testimony would have been applicable.  We note that "there is always the possibility of prejudice in joining separate instances of any offense in the same indictment." *State v. Strobel*, 51 Ohio App.3d 31, 32 (3d Dist.1988).  Defendant bares the burden to " 'either *affirmatively demonstrate* before trial that his rights would be prejudiced by the joinder, or to show at the close of the state's case, or at the conclusion of all the evidence, that his rights actually had been prejudiced by the joinder.' "  (Emphasis sic.)  *Id.* at 33, quoting *State v. Williams*, 1 Ohio App.3d 156, 159 (10th Dist.1981).  In our view, defendant has completely failed to demonstrate prejudice arising from the joinder of the indictments for trial, and no such prejudice is revealed in the record.

{¶ 22} Moreover, when defendant asserts that his defense will be prejudiced by the joinder of two or more indictments in a single trial, the prosecution may negate defendant's claim of prejudice with a showing that: (1) the evidence of the other crimes would be admissible even if the counts were severed, or (2) if not, whether the evidence of each crime is simple and distinct. *Banks*, citing *Schaim* at 59.  The two tests are disjunctive, so that the satisfaction of one negates a defendant's claim of prejudice without consideration of the other.  *Sullivan* at ¶ 22, citing *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379 (10th Dist.).

{¶ 23} Although most of the evidence relevant the Burnzie's Bar incident would be inadmissible if offered in a separate trial of defendant's crimes against Fraganato, we find that the evidence relevant to each indictment was both simple and distinct.  Indeed, the bulk of the evidence in support of defendant's guilt of the offenses committed against Fraganato came from Fraganato's testimony at trial.  Fraganato was not involved in the Burnzie's Bar shooting so there was no danger that the jury would connect Fraganato's testimony to the shooting at Burzie's Bar or consider his testimony when determining defendant's guilt of the offenses charged in the Burnzie's Bar indictment.

{¶ 24} Moreover, the primary factual issue with respect to the Burnzie's Bar incident was the identification of defendant as the shooter. The State presented testimony from the victim and several eyewitnesses, video surveillance footage, and forensic evidence connecting defendant to the gun that fired ten of the spent shell casings recovered at the scene. There was little chance that the jury would consider such evidence in determining defendant's guilt of the offenses committed against Fraganato or that the jury could become confused about the relevance of such evidence.

{¶ 25} In short, we find that the State negated any possible prejudice to defendant arising from the joinder of the indictments for trial by showing that the evidence presented at trial was both simple and distinct. After reviewing the entire record, we cannot say that it was an abuse of the trial court's discretion, let alone plain error, for the court to allow the indictments to remain joined throughout the trial.

{¶ 26} For the foregoing reasons, defendant's first assignment of error is overruled.

## V.  MULTIPLE SENTENCES/ALLIED OFFENSES

{¶ 27} Pursuant to R.C. 2941.25(A), where defendant's conduct " 'can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.' " *State v. Roush*, 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 66, quoting R.C. 2941.25(A). Where, however, " 'the defendant's conduct constitutes two or more offenses of dissimilar import' or 'results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.' " *Id.*, quoting R.C. 2941.25(B).

{¶ 28} The analysis adopted by the Supreme Court of Ohio in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, requires a court to ask whether "multiple offenses can be committed by the same conduct" and "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' " *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50. If the answer to both questions is yes, the court must merge the allied offenses prior to sentencing. *Id.* at ¶ 50 "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the

defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." (Emphasis sic.) *Id.* at ¶ 51. As an appellate court, we must employ a de novo standard in reviewing the trial court's determination whether R.C. 2941.25 requires merger of multiple convictions. *Roush* at ¶ 47, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1.

{¶ 29} A conviction for aggravated robbery, as defined in R.C. 2911.01(A)(1), requires proof that defendant brandished a deadly weapon in order to facilitate the theft offense. Kidnapping, in accordance with R.C. 2905.01, requires proof that defendant restrained Fraganato of his liberty or removed him from the place where he was found. The Supreme Court has recognized that the commission of aggravated robbery necessarily involves the restraint of the victim. *See State v. Jenkins,* 15 Ohio St.3d 164, 198 (1984), fn. 29.

{¶ 30} However, aggravated robbery and kidnapping are not allied offenses of similar import where (1) "the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense," or (2) "the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime." *State v. Logan*, 60 Ohio St.2d 126 (1979), syllabus.

{¶ 31} Here, defendant forced Fraganato to drive away from the gas station at gun point, followed by a second vehicle driven by his accomplice, and then ordered Fraganato to stop the vehicle in a more secluded area where he assaulted and robbed him. Thus, the facts of this case show that defendant transported his victim from the location where he first confronted him and that such transportation was both secretive and greater than was necessary to commit the underlying robbery offense.

{¶ 32} In *State v. Cobb,* 10th Dist. No. 90AP-793 (July 30, 1991), appellant made the victim drive his car several miles from a parking lot before ordering him out of the car and robbing him at gunpoint. In affirming the trial court's refusal to merge the kidnapping and aggravated robbery convictions, we found that the restraint of the victim exceeded that necessary to complete the offense of aggravated robbery and that there was a separate animus for each offense. *Id.*, citing *State v. Moss,* 69 Ohio St.2d 515 (1982). In holding that kidnapping and aggravated burglary were not allied offenses of similar

import and that separate sentences were appropriate, we noted that "if appellant had left his victim in the parking lot, the kidnapping and aggravated robbery would have been allied offenses of similar import." *Id.*

{¶ 33} As was the case in *Cobb*, had defendant robbed Fraganato in his car and then left him at the gas station, the kidnapping and aggravated robbery convictions likely would have merged for purposes of sentencing. However, the facts of this case establish that defendant's restraint and asportation of Fraganato exceeded that which was necessary to complete the offense of aggravated robbery, and that the kidnapping and aggravated robbery were committed with a separate animus. Accordingly, the convictions do not merge and defendant is subject to a separate conviction for each offense. *See, e.g.*, *State v. Ross,* 8th Dist. No. 98763, 2013-Ohio-3130, ¶ 57-58 (When contrasted to the moments it took to steal victim's cell phone, the time it took defendant to drive the victim approximately two blocks in a van was a prolonged restraint sufficient to establish that the aggravated robbery and kidnapping were not allied offenses); *State v. Helms*, 7th Dist. No. 08 MA 199, 2012-Ohio-1147, ¶ 47 (Where defendant pushed a vehicle containing injured victim off the main road in order to avoid detection while he searched for items to steal, a separate animus existed for the kidnapping conviction and such conviction did not merge with defendant's conviction for aggravated robbery).

{¶ 34} Based upon the foregoing, defendant's second assignment of error is overruled.

## VI. CONSECUTIVE SENTENCES

{¶ 35} "R.C. 2929.14(C)(4) now requires the trial court to make three findings before imposing consecutive sentences: (1) that consecutive sentences are necessary to protect the public from the future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of the subsections (a), (b), or (c) apply." *Roush* at ¶ 76. " The trial court is not required to give reasons explaining these findings, nor is the court required to recite any 'magic' or 'talismanic' words when imposing consecutive sentences." *Id.*, quoting *State v. Farnsworth*, 7th Dist. No. 12 CO 10, 2013-Ohio-1275, ¶ 8. "Nevertheless, the record must reflect that the court made the findings required by the statute." *Id.*

{¶ 36} There is no dispute that trial court failed to make the required findings in this case. It is also clear that defendant failed to raise the error in the trial court. Accordingly, we review the alleged error under the plain error standard. *State v. Hunter*, 10th Dist. No. 13AP-196, 2013-Ohio-4013.

{¶ 37} The State argues that the trial court's failure to make the required findings does not constitute "plain error" absent some showing of prejudice to defendant. However, at least two recent decisions from this court have rejected the State's argument, without further discussion, based upon the established authority in this district. *State v. Howze,* 10th Dist. No. 13AP-386, 2013-Ohio-4800, ¶ 21; *State v. Hunter*, 10th Dist. No. 13AP-196, 2013-Ohio-4013, ¶ 9.[3] We see no reason to depart from established precedent in this case.

{¶ 38} "[W]hen the trial court fails to articulate the appropriate findings required by R.C. 2929.14(C)(4), the case is to be remanded for the trial judge to consider whether consecutive sentences are appropriate under [R.C. 2929.14(C)(4)] and, if so, to enter the proper findings on the record." *State v. Bass,* 10th Dist. No. 12AP-622, 2013-Ohio-4503, ¶ 44. Accordingly, defendant's third assignment of error is sustained.

## VII. CONCLUSION

{¶ 39} Based upon the foregoing, we overrule defendant's first and second assignments of error but we sustain defendant's third assignment of error. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and the case is hereby remanded to the trial court for further proceedings consistent with this decision.

*Judgment affirmed in part*
*and reversed in part;*
*cause remanded.*

BROWN and O'GRADY, JJ., concur.

_____

[3] *State v. Wilson*, 10th Dist. No. 12AP-551, 2013-Ohio-1520, ¶ 18 ("Because the record demonstrates that the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences on appellant's multiple offenses, appellant's sentence is contrary to law and constitutes plain error"); *State v. Bender*, 10th Dist. No. 12AP-934, 2013-Ohio-2777, ¶ 7 ("Our recent cases indicate a tendency of this court to view a failure to precisely comply with R.C. 2929.14 as plain error as a matter of law") *State v. Bailey*, 10th Dist. No. 12AP-699, 2013-Ohio-3596, ¶ 46 ("Failure to fully comply with R.C. 2929.14(C)(4) is plain error as a matter of law.").