[Cite as *State v. Phipps*, 2014-Ohio-2905.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 13AP-640 |
| v. | : | (C.P.C. No. 12CR-12-6254) |
| Sharvess Phipps, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on June 30, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*Timothy Young*, Ohio Public Defender, and *Carrie Wood*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

T. BRYANT, J.

{¶ 1} Defendant-appellant, Sharvess Phipps, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas following his guilty plea to seven counts of aggravated robbery, four counts of aggravated burglary, five counts of burglary, three counts of kidnapping, one count of felonious assault, one count of conspiracy, and accompanying firearm specifications.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2}   On December 12, 2012, a Franklin County Grand Jury indicted appellant in case No. 12CR-6254 on 41 felony counts arising from a series of robberies, burglaries and home invasions occurring in southeast Columbus between May 18 and June 29, 2012. On January 17, 2013, appellant, represented by counsel, entered guilty pleas to 21 counts of the indictment. Specifically, appellant pleaded guilty to 7 counts of aggravated robbery in violation of R.C. 2911.01, all with 3-year firearm specifications in violation of R.C. 2941.145, 4 counts of aggravated burglary in violation of 2911.11, 3 with 3-year firearm specifications in violation of R.C. 2941.145, and 1 with a 1-year firearm specification in violation of R.C. 2941.141, 5 counts of burglary in violation of R.C. 2911.12, 1 with a 1-year firearm specification in violation of R.C. 2941.141, 3 counts of kidnapping in violation of R.C. 2905.01, all with 3-year firearm specifications in violation of R.C. 2941.145, 1 count of felonious assault in violation of R.C. 2903.11, with a 3-year firearm specification in violation of R.C. 2941.145, and 1 count of conspiracy in violation of R.C. 2923.01. In exchange for the guilty plea, the prosecutor recommended that the trial court enter a nolle prosequi to the remaining 20 counts of the indictment. In addition, appellant entered guilty pleas in 2 other felony cases, 12CR-3426 and 12CR-3573.

{¶ 3}   That same day, the trial court accepted appellant's guilty pleas in all three cases, found him guilty, dismissed the remaining 20 counts in case No. 12CR-6254, and set the matter for sentencing on January 25, 2013. The trial court did not order a presentence investigation ("PSI") report, as one had already been prepared in July 2012 for another pending felony case, case No. 12CR-1628.

{¶ 4}   On January 25, 2013, appellant appeared with counsel for sentencing. In case No. 12CR-6254, the trial court imposed prison terms for each of appellant's 21 felony convictions and the accompanying firearm specifications. The court also imposed prison terms for appellant's convictions in case Nos. 12CR-1628, 12CR-3426, and 12CR-3573. Appellant's aggregate prison sentence totaled 172 years and 11 months.

{¶ 5}   Due to certain errors in the January 25, 2013 sentencing proceedings, the trial court conducted a resentencing hearing on June 14, 2013, at which appellant again appeared with counsel. In a "Corrected Re-Sentencing Judgment Entry" filed on July 23, 2013, the trial court imposed the following sentence:

The Court hereby imposes the following sentence: EIGHT (8) YEARS CONSECUTIVE to THREE (3) YEARS for the Firearm Specification on **Count One** CONCURRENT to EIGHT (8) YEARS CONSECUTIVE to THREE (3) YEARS for the Firearm Specification on **Count Two**; CONSECUTIVE to FIVE (5) YEARS on **Count Five**; CONSECUTIVE to ELEVEN (11) YEARS on **Count Seven** and CONSECUTIVE to THREE (3) YEARS for the Firearm Specification; CONSECUTIVE TO ELEVEN (11) YEARS on **Count Eight** and CONSECUTIVE TO THREE (3) YEARS for the Firearm Specification; CONCURRENT to ELEVEN (11) YEARS on **Count Ten**; CONSECUTIVE to EIGHT (8) YEARS on **Count Eleven** and CONSECUTIVE TO ONE (1) YEAR for the Firearm Specification, CONSECUTIVE to FIVE (5) YEARS on **Count Fifteen**; CONSECUTIVE to ELEVEN (11) YEARS on **Count Eighteen** CONSECUTIVE to ONE (1) YEAR for the Firearm Specification; CONSECUTIVE to ELEVEN (11) YEARS on **Count Twenty** CONSECUTIVE to THREE (3) YEARS for the Firearm Specification; CONCURRENT to ELEVEN (11) YEARS on **Count Twenty-One** CONSECUTIVE to THREE (3) YEARS for the Firearm Specification; CONCURRENT TO ELEVEN (11) YEARS on **Count Twenty-Two**; CONCURRENT TO ELEVEN (11) YEARS on **Count Twenty-Five;** CONCURRENT TO ELEVEN (11) YEARS ON **Count Twenty-Six**; CONSECUTIVE to ELEVEN (11) YEARS on **Count Twenty-Eight** CONSECUTIVE to THREE (3) YEARS for the Firearm Specification; CONSECUTIVE to ELEVEN (11) YEARS on **Count Twenty-Nine** CONSECUTIVE to THREE (3) YEARS for the Firearm Specification; **CONSECUTIVE** to ELEVEN (11) YEARS on **Count Thirty**; CONSECUTIVE to EIGHT (8) YEARS on **Count Thirty-One**; CONSECUTIVE to FIVE (5) YEARS on **Count Thirty-Three**; CONSECUTIVE to FIVE (5) YEARS on **Count Thirty-Four**; and CONSECUTIVE to THREE (3) YEARS on **Count Thirty-Five** at the Ohio DEPARTMENT OF REHABILITATION AND CORRECTIONS. The total on all counts is 150 years. Sentence to be served CONSECUTIVE to Case Numbers 12CR-1628; 12CR-3426, and 12CR-3573. The Court elects not to impose the following: THREE (3) YEAR gun specification on Counts Ten, Twenty-Two, Twenty-Five, Twenty-Six, Thirty and Thirty-One.

## II. ASSIGNMENTS OF ERROR

{¶ 6} Appellant filed a timely notice of appeal from his conviction and sentence in case No. 12CR-6254; case Nos. 12CR-1628, 12CR-3426, and 12CR-3573 have not been appealed. Appellant sets forth the following six assignments of error for our review:

**ASSIGNMENT OF ERROR I:**

**The trial court's failure to ensure that Sharvess Phipps understood the maximum penalty for his plea, when the court failed to (1) ask Sharvess whether he understood that his plea could result in a "de facto" sentence of life without the possibility of parole, and (2) inform Sharvess that each gun specifications [sic] must be run consecutively to any other prison term or mandatory prison term previously or subsequently imposed, rendered Sharvess's guilty plea unknowing, unintelligent, and involuntary. Fourteenth Amendment to the United States Constitution; Section 10, Article I of the Ohio Constitution.**

**ASSIGNMENT OF ERROR II:**

**The trial court abused its discretion when it failed to consider statutory sentencing factors. Sent. Hrg. at pp. 3-4. R.C. 2929.11, R.C. 2929.12, *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).**

**ASSIGNMENT OF ERROR III:**

**The trial court abused its discretion when it sentenced Sharvess to a "de facto" life without parole sentence for aggravated burglaries. Sent. Hrg. at pp. 3-4. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 19.**

**ASSIGNMENT OF ERROR IV:**

**The trial court erred by imposing consecutive sentences without making the findings required by R.C. 2929.14(C) and Crim.R. 32(A)(4) at the sentencing hearing, and without have the factual basis to make those findings. Sent. Hrg. 3-4, 32.**

**ASSIGNMENT OF ERROR V:**

**The trial court erred when it imposed separate sentences for offenses that arose from the same conduct, were not committed separately or with a separate animus, and should have been merged for sentencing purposes under R.C. 2941.25. Re-Sent. at p. 11-12.** *State v. Johnson,* **128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061; Amendment V, U.S. Constitution; Section 10, Article I of the Ohio Constitution.**

**ASSIGNMENT OF ERROR VI:**

**Sharvess Phipps was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United State[s] Constitution and Article I, Section Sixteen of the Ohio Constitution when defense counsel (1) failed to take any steps to ensure or support the sentence requested from the trial court; (2) failed to take any steps to cure this failure when he admitted he now had information to do so; and (3) failed to object when the trial court failed to merge allied offenses.**

## III. DISCUSSION

### A. First Assignment of Error – Guilty Plea

{¶ 7} In his first assignment of error, appellant contends his guilty plea was not knowingly, intelligently, and voluntarily entered because the trial court failed to inform him of the maximum penalty involved in contravention of Crim.R. 11(C)(2)(a). Appellant raises two separate issues under this assignment of error: (1) the trial court failed to ensure he understood that the maximum penalty amounted to "de facto" life imprisonment, and (2) the trial court failed to inform him that the sentences on the firearm specifications were statutorily required to be served consecutively to prison terms imposed on the underlying offenses, and to any other prison term, or mandatory prison term previously or subsequently imposed.

{¶ 8} Crim.R. 11 sets forth the procedure a trial court must follow when accepting a guilty plea in a felony matter. Crim.R. 11(C)(2)(a) through (c) provide that a trial court must personally address the defendant and (a) determine that the defendant is making the plea voluntarily, understanding the nature of the charges and the maximum penalty

involved and potential ineligibility for probation or community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea, including the trial court's ability, upon acceptance of the plea, to proceed with judgment; and (c) inform the defendant of his rights and determine that the defendant understands the nature of the rights he is waiving, including the right to a jury trial, the right to confront witnesses against him, the right to have compulsory process for obtaining witnesses, the right to require the state to prove the defendant's guilt beyond a reasonable doubt, and the right against self-incrimination had the case gone to trial. *State v. Darks*, 10th Dist. No. 05AP-982, 2006-Ohio-3144, ¶ 9.

{¶ 9}   A trial court must strictly comply with the mandates of Crim.R. 11(C)(2)(c) regarding the waiver of constitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, syllabus.  Strict compliance requires that the court expressly inform the defendant of the constitutional rights he is waiving and make certain the defendant understands them. *Id.* at ¶ 27.  In contrast, a trial court must only substantially comply with the requirements of Crim.R. 11(C)(2)(a) and (b) regarding nonconstitutional rights. *Id.* at ¶ 14.  "Substantial compliance means that under the totality of the circumstances, the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).  "If it appears from the record that the defendant appreciated the effect of his plea and his waiver of rights in spite of the trial court's error, there is still substantial compliance." *State v. Caplinger*, 105 Ohio App.3d 567, 572 (4th Dist.1995), citing *Nero* at 108-09.  Furthermore, "[a] defendant must show prejudice before a plea will be vacated for a trial court's error involving Crim.R. 11(C) procedure when nonconstitutional aspects of the colloquy are at issue." *Veney* at ¶ 17.  The test for prejudice is whether the plea would have otherwise been made. *Nero* at 108.

{¶ 10} Appellant first contends the trial court failed to satisfy Crim.R. 11(C)(2)(a) because it did not ensure that he understood the maximum penalty involved, i.e., "de facto" life imprisonment.  Specifically, appellant contends that under a multi-count indictment, the trial court must ensure that a defendant understands the "maximum exposure" for his plea, not just the maximum sentence for each individual count when those counts can or must be run consecutively to each other.  (Appellant's brief, at 13.)

{¶ 11} We note initially that the rights contained in Crim.R. 11(C)(2)(a) regarding the defendant's understanding of the maximum penalty involved are nonconstitutional. Thus, substantial compliance is sufficient. *State v. Boggan,* 8th Dist. No. 100096, 2014-Ohio-1428, ¶ 8.

{¶ 12} At the January 17, 2013 plea hearing, before accepting appellant's guilty pleas, the trial court engaged in a Crim.R. 11 colloquy with appellant. The trial court first noted that appellant was entering guilty pleas in three separate felony cases. Through inquiry, the court determined that appellant was 20 years old, graduated from high school, and could read, write, and understand English.

{¶ 13} Thereafter, the court separately discussed each of the three felony cases to which appellant was pleading guilty. Regarding case. No. 12CR-3426, the court explained that appellant was pleading guilty to having a weapon under disability, a third-degree felony, which carried a maximum possible penalty of three years in prison, a $10,000 fine, and three years of post-release control. When asked if he understood the nature of the case and the maximum penalty, defendant replied, "Yes, sir." (Jan. 17, 2013 Tr. 6.) Upon the court's further inquiry, appellant averred that he had no questions regarding the case.

{¶ 14} With respect to case No. 12CR-3573, the court explained that appellant was pleading guilty to possession of criminal tools, a fifth-degree felony, which carried a maximum possible penalty of 12 months in prison, a $2,500 fine, and three years of post-release control. When asked if he understood "all of that," appellant replied, "Yes, I do." (Jan. 17, 2013 Tr. 7.) Appellant further averred that he had no specific questions about the case.

{¶ 15} As to case No. 12CR-6254, the court explained that appellant was pleading guilty to (1) seven counts of aggravated robbery, all first-degree felonies, all with accompanying three-year firearm specifications; (2) four counts of aggravated burglary, three with accompanying three-year firearm specifications and one with an accompanying one-year firearm specification; (3) five counts of burglary, all second-degree felonies, one with an accompanying one-year firearm specification; (4) three counts of kidnapping, all first-degree felonies, all with accompanying three-year firearm specifications; (5) one count of felonious assault, a second-degree felony, with an accompanying three-year firearm specification; and (6) one count of conspiracy, a second-degree felony.

{¶ 16} The court averred that each of the 7 aggravated robbery counts, the 4 aggravated burglary counts, and the 3 kidnapping counts carried maximum possible prison terms of 11 years, and that each of the 5 burglary counts, the felonious assault count, and the conspiracy count, carried maximum possible prison terms of 8 years. The court further explained that the 3-year firearm specifications attached to the 7 aggravated robbery counts, 3 of the 4 aggravated robbery counts, the 3 kidnapping counts, and the felonious assault count were all to be served in addition to the prison terms on the underlying offenses, and that the 1-year firearm specifications attached to one of the aggravated burglary counts and one of the burglary counts were to be served in addition to the prison terms on the underlying offenses. The court further averred that "[i]f all of those were run consecutive to one another, the total sentence could be as high as 254 years." (Jan. 17, 2013, Tr. 11.)

{¶ 17} The court also stated that each the first-degree felony counts carried a maximum fine of $20,000 and a mandatory five-year period of post-release control, and that each of the second-degree felony counts carried a maximum fine of $15,000 and a mandatory three-year period of post-release control. Following this explanation, the court inquired "do you have any questions with regard to which offenses you are pleading guilty to and what the possible maximum penalty is?" Appellant responded, "No." (Jan. 17, 2013 Tr. 11.)

{¶ 18} The court next stated:

> [I]n addition to those sentences that I have already gone over with the maximum possible, there are some mandatory prison terms involved here, and they are the firearm specifications. Firearm specifications come in two varieties here. One of them is a three-year specification. There is a three-year firearm specification on counts 1, 2, 7, 8, 10, 21, 22, 25, 26, 28, 29, 30, 31 and 20. Now, each of those have [sic] a three-year firearm specification that must be served consecutive to the underlying sentence.
>
> In addition to that, there are two counts that have one-year firearm specifications and there are, therefore, required mandatory prison for that one year. And those counts are count 11 and count 18 that carry the one-year firearm specification.

When asked if he understood, appellant replied "Yes." (Jan. 17, 2013 Tr. 11-12.)

{¶ 19} Following the court's averment that the remaining charges in the indictment would be dismissed in exchange for appellant's guilty plea, the court asked appellant, "do you, sir, have any questions about any of these things that I just have gone over that you would like to ask [defense counsel] about or you would like to ask me about"? (Jan. 17, 2013 Tr. 13.) After conferring briefly with defense counsel, appellant responded, "I don't have anymore [sic] questions." (Jan. 17, 2013 Tr. 13.)

{¶ 20} The court also noted that it had before it appellant's signed guilty plea forms in all three felony cases. In response to the court's questions, appellant averred that (1) trial counsel had gone over the guilty plea forms with him prior to his signing them, (2) he understood the guilty plea forms, (3) he signed the guilty plea forms voluntarily, and (4) he understood that by signing the guilty plea forms he was waiving several constitutional rights. The guilty plea form in case No. 12CR-6254 stated that constitutional and statutory rights were explained to appellant both by the court and appellant's attorney, and that appellant had reviewed the facts and law of his case with his attorney. In addition, the guilty plea form set forth each of the 21 counts to which appellant pleaded guilty, along with the maximum possible prison term for each offense and the accompanying firearm specifications, as well as the possible aggregate maximum prison term of 254 years. The guilty plea form also indicated that R.C. 2929.13(F) required mandatory prison terms for the one-year and three-year firearm specifications and that appellant would not be eligible for community control sanctions, judicial release, or earned days of credit regarding those prison terms.

{¶ 21} After reviewing the totality of the circumstances, we conclude that appellant subjectively understood that his guilty plea resulted in a potential sentence amounting to life imprisonment. Although there is no simple or precise way to determine what a person subjectively understands, if a defendant receives proper information, it can ordinarily be assumed he understood that information. *State v. Martin,* 8th Dist. No. 63177 (Sept. 23, 1993). Here, the trial court, both in the guilty plea form and during the plea hearing, informed appellant about the potential maximum prison term for each of the 21 offenses and accompanying firearm specifications and that the maximum aggregate potential prison term was 254 years. The court asked appellant if he had questions about the offenses to which he was pleading guilty or the potential maximum penalty for those

offenses, and he responded in the negative. Appellant averred at the plea hearing that he could read and write and understood the English language. Nothing in the record suggests that appellant did not comprehend that a prison term of 254 years is tantamount to life imprisonment.

{¶ 22} Moreover, there is simply nothing in the record to suggest appellant's guilty plea would have been different had the trial court expressly informed him that the maximum penalty resulting from his guilty plea would amount to life imprisonment. In exchange for his guilty plea to 21 counts, appellant avoided trial on an additional 20 counts. In addition, we note that appellant declined the state's initial plea offer of 33 years imprisonment in exchange for his testimony against other persons who may have been involved in the crimes. Further, as noted above, the trial court correctly informed appellant both in the guilty plea form and during the plea hearing that a guilty plea to the 21 offenses and the accompanying firearm specifications carried the potential maximum penalty of 254 years imprisonment. The record is devoid of any evidence indicating appellant misunderstood the ramifications of his decision. As a result, appellant has failed to demonstrate that the trial court's failure to invoke the talismanic words "life imprisonment" were critical to his decision to enter the guilty pleas. Accordingly, under the totality of the circumstances, appellant has not demonstrated any prejudice resulting from the trial court's failure to expressly inform appellant that his maximum prison sentence of 254 years was tantamount to life imprisonment.

{¶ 23} Appellant next contends the trial court failed to inform him that the sentences on the firearm specifications were statutorily required to be served consecutively to prison terms imposed on the underlying offenses and to any other prison term or mandatory prison term previously or subsequently imposed. R.C. 2929.14(C)(1)(a) provides, in relevant part:

> [I]f a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony * * * the offender shall serve any mandatory prison term imposed * * * consecutively to and prior to any prison term imposed for the underlying felony pursuant to [R.C. 2929.14(A)], and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

{¶ 24} Appellant maintains that in order for the trial court to substantially comply with Crim.R. 11(C)(2)(a), it had to inform him that the firearm specifications to which he was pleading guilty must be served consecutively: (1) to their underlying offenses, (2) to each other, and (3) to sentences imposed in the other three felony cases to which appellant entered guilty pleas. Appellant contends the trial court failed to do so, and that such failure resulted in his not being informed of the maximum penalty involved in contravention of Crim.R. 11(C)(2)(a).

{¶ 25} Appellant's claim that he was not properly advised that the prison terms for the firearm specifications were mandatory and were required to be served consecutively to the sentences imposed for the underlying felony convictions and to each other is belied by the record. As noted above, the trial court expressly informed appellant that the prison terms imposed on each of the one- and three-year firearm specifications were mandatory and required to be served consecutively to the sentence imposed on the underlying offense. Further, the signed guilty plea form also specifically advised appellant that R.C. 2929.13(F) required mandatory prison terms for each of the one- and three-year firearm specifications.

{¶ 26} Although appellant correctly notes that the trial court did not expressly advise him that the firearm specifications in case No. 12CR-6254 must be served consecutively to the prison terms imposed in the other three felony matters, appellant has failed to demonstrate resulting prejudice. The record contains no evidence suggesting that appellant would not have pleaded guilty had the trial court expressly informed him of this consequence. We note, again, that appellant's guilty plea resulted in the dismissal of 20 additional felony counts, many of which carried firearm specifications. The record contains no evidence indicating appellant did not understand the consequences of his decision to plead guilty. As a result, appellant has failed to demonstrate that the trial court's failure to expressly advise him that the firearm specifications in case No. 12CR-6254 must be served consecutively to the prison terms imposed in the other three felony matters affected his decision to enter the guilty pleas. Thus, appellant has failed to demonstrate prejudice.

{¶ 27} Appellant's first assignment of error is overruled.

**B. Second, Third, Fourth, and Fifth Assignments of Error – Sentencing**

{¶ 28} In his second, third, fourth, and fifth assignments of error, appellant essentially challenges the trial court's imposition of a 150-year sentence in 12CR-6254. More specifically, in his second and third assignments of error, appellant asserts the trial court abused its discretion in imposing a sentence amounting to "de facto" life imprisonment without proper consideration and application of the sentencing factors set forth in R.C. 2929.11 and 2929.12. In his fourth assignment of error, appellant argues the trial court erred by imposing consecutive sentences without making the findings required by R.C. 2929.14(C)(4) and Crim.R. 32(A). In his fifth assignment of error, appellant contends the trial court erred in failing to merge certain convictions for sentencing purposes in contravention of R.C. 2941.25. Because these challenges all involve sentencing issues, we address them together where appropriate.

{¶ 29} Resolution of these assignments of error requires review both of the uncontested facts underlying appellant's convictions and sentence as set forth by the prosecutor at the plea hearing, and the statements made by appellant, defense counsel, and the trial court at the sentencing hearings.

{¶ 30} Facts pertaining to the May 2012 incidents are as follows. On May 18, 2012, appellant robbed two women at gunpoint while they were seated in a car, taking from them several items of property, including a laptop. Several hours later, appellant posted on his Facebook account that he had a laptop for sale. On May 25, 2012, appellant entered a residence through an open garage door and took a purse, wallet, credit card, Social Security card, bottles of alcohol and identifications. Later that day, appellant posted on his Facebook account that he needed to sell some items. On May 31, 2012, appellant, wearing a black mask and black gloves, entered a woman's home, pointed a firearm at her, covered her mouth with his hand, and demanded money. After the woman gave him $350 in cash and a necklace, appellant instructed her not to call the police for ten minutes. He then fled, taking with him the woman's garage door opener. Fifteen minutes later, appellant posted a picture of himself on his Facebook account holding $352 in cash. Following appellant's arrest, police executed a valid search warrant at appellant's residence and storage unit and recovered much of the property stolen in the three May incidents.

{¶ 31} Facts regarding the June incidents are as follows.  Between June 6 and 7, 2012, married homeowners left their garage door open slightly while they were away from home.  Upon returning to their home, the homeowners discovered that numerous firearms, jewelry, and other items had been stolen.  On June 16, 2012, appellant entered a residence through an unlocked garage door and stole a Wii game console and game, jewelry, and a laptop.  Appellant's co-defendant, Eddie Mims, admitted to committing this offense with appellant.  On June 20, 2012, at 1:30 a.m., a woman was seated in her living room when appellant and Mims entered her residence using a garage door opener found in the woman's car.  One of the men told the woman not to move.  After she screamed, the men fled.  Sometime later on June 20, 2012, appellant and Mims, wearing black ski masks and gloves, entered a residence.  They held one victim at gunpoint, got the second victim out of bed at gunpoint, and led both victims around the house looking for items of value.  The two eventually took watches, a laptop, some iPods, and jewelry.

{¶ 32} On June 23, 2012, at 3:10 a.m., appellant, wearing a dark mask and gloves and carrying a flashlight and a firearm, entered a residence through a partially open garage door.  Appellant confronted one of the residents, a 79 year-old man.  The man resisted, and appellant struck him in the head with the firearm, causing a laceration which required hospitalization.  Appellant stole two firearms from the residence.  When appellant was arrested, gloves in his possession contained DNA which was subsequently matched to the victim.  On June 28, 2012, at approximately 1:30 a.m., appellant entered a residence through a slightly-open garage door, removed a laptop, and fled when a dog alerted the resident of the intrusion.  On June 28, 2012, at approximately 3:20 a.m., appellant, wearing a black ski mask, broke a window in the victim's vehicle and used the garage door opener to enter the residence.  The victim woke to find appellant standing next to her bed.  The victim screamed, waking another person.  The victims subsequently discovered that an iPad was missing from a nightstand.  On June 29, 2012, a person observed appellant and Mims casing a house; both fled when the person shouted at them.  Police officers who were in the vicinity investigating the crime spree apprehended and arrested appellant.  Upon appellant's arrest, police found a firearm that subsequently provided the basis for the charges in 12CR-3426, along with a mask, gloves and duct tape that later provided the basis for the charges in 12CR-3573.  Property stolen during the

June incidents was recovered from appellant's residence and storage unit pursuant to a valid search.

{¶ 33} At the outset of the January 25, 2013 sentencing hearing, the trial court stated:

> Before I begin, let me say that this is a vicious rampage. This is a vicious crime spree. This is a case that involves the most serious of offenses short of murder, I suppose. We are talking about multiple aggravated burglaries at different dates, different times, different places, different offenses.
>
> But more than that, more egregious perhaps than what we may refer to as a normal burglary, these were more serious. They were more serious because they were home invasions. The difference being apparently this group, they didn't care whether anybody was home or not. They just crashed in and held the home of people who lived there hostage and took everything they wanted and committed individual robberies on the people who lived there and on and on and on. It is not just a burglary; it is a home invasion. So I think that needs to be considered.

(Jan. 25, 2013 Tr. 3-4.)

{¶ 34} The court continued:

> Also I have to consider that these were done with a firearm. These were not offenses in which the defendant was unarmed. In most of these cases, probably all, he was armed with a firearm. So, there again, that makes the case more serious. I am saying these things because these are things that I think I must take into consideration in the sentencing.
>
> Also we have multiple, I need to reiterate this, but we have multiple, multiple, multiple offenses. So that sentence that we are about to go over will be harsh and it should be [harsh]. If we cannot secure our own homes, if we cannot protect people in their own homes, then perhaps the Court should fold up and close up and quit. In other words, all I am saying is that is one of our most fundamental purposes for being here, for enforcing these laws, for punishing people who violate these laws so that you can have safety, peace of mind in your own home. And if we don't enforce the laws in order to provide that for you, we are not doing our job. So it is serious and I take it seriously, as I think I should.

(Jan. 25, 2013 Tr. 4.)

{¶ 35} Following these statements, the trial court permitted several of the victims to discuss the nature of the crimes committed against them and the impact appellant's actions had on their lives. Without exception, the victims emphasized that appellant's crime spree terrorized their formerly quiet, safe neighborhood for a five-week period and that many persons in the neighborhood, including themselves, remained unable to fully resume normal activities due to ongoing fears and safety concerns. The 79-year-old victim noted that appellant struck him with a firearm when he attempted to defend his home and family. Another victim averred that he researched Facebook accounts belonging to appellant and his associates following appellant's arrest and discovered several postings describing appellant as a gang leader and depicting him brandishing firearms and using drugs. All of these victims implored the court to impose a sentence resulting in appellant's lifetime imprisonment.

{¶ 36} Following the victim impact statements, the prosecutor noted that appellant was a known gang member and crack addict, and that the PSI prepared in case No. 12CR-1628 revealed juvenile adjudications on burglary, theft and receiving stolen property charges, and adult convictions on attempted assault, obstructing justice, drug abuse, and having a weapon under disability charges. In addition, the prosecutor averred that appellant's Facebook account postings revealed that he boasted about his crimes to his peers and showed no remorse for his actions. The prosecutor further noted that in telephone calls appellant made from jail five days after his arrest, he stated that he would not stop committing crimes and that if he was ever caught again, the police would have to shoot him because he refused to go back to jail.

{¶ 37} Thereafter, the court provided defense counsel the opportunity to make a statement in allocution. Counsel noted that the evidence against appellant was overwhelming, making it virtually impossible to construct a plausible defense. Counsel averred that appellant understood the overwhelming nature of the amassed evidence, cooperated fully with defense counsel and the prosecution, and made the decision to plead guilty and avoid trial. Counsel noted that appellant's decision to forego a trial saved the county time and money, saved the victims from a prolonged trial, and brought closure to the proceedings. Counsel further averred that he did not believe appellant to be "an evil person," that he was "very engaging, direct * * * [and] healthy" and "could have had a

fabulous life" before committing these offenses. (Jan. 25, 2013 Tr. 31.) Defense counsel requested that the court impose a sentence that would provide appellant "some hope for a future outside the institution." (Jan. 25, 2013 Tr. 31.)

{¶ 38} In addition, defense counsel read appellant's prepared statement. In that statement, appellant accepted responsibility and expressed remorse for his actions. He also averred that he did not accept the state's initial plea offer because it required him to provide potentially damaging information about Mims and others, and he did not think he would survive prison if labeled a "snitch." (Jan. 25, 2013 Tr. 29.) He stated that at the time he committed the offenses, he was homeless and using multiple drugs "to help keep the stress level down and keep the voices out of my head." (Jan. 25, 2013 Tr. 29.) He further indicated that he believed time in prison would provide the help he needed, that he was a "good person at heart," and that he "just got caught up in the wrong crowd." (Jan. 25, 2013 Tr. 30.)

{¶ 39} Appellant then addressed the court. He apologized to the victims, pledged that he would never again commit such crimes, and indicated his intention to rehabilitate himself in prison.

{¶ 40} Thereafter, the court stated:

> This case is truly a tragedy. It is one of the saddest parts of this job in a sense because we come across cases like this where you see a young person ruin their whole life, and that is the case here.
>
> This young person has committed these horrendous crimes that we have heard about and he can't stay on the streets, can't put him on the street. He can't function. That gives me no particular pleasure, but that is what has got to be done. * * *
>
> So the sad side of this is not only the terror and horror that the victims have went through, but also the waste of a very young life, which is really over at this point; but we have to do what needs to be done.

(Jan. 25, 2013 Tr. 32.)

{¶ 41} At the June 14, 2013 resentencing hearing, the trial court again provided appellant the opportunity to make a statement in allocution. Appellant averred that he had nothing to add to the statements he made at the initial sentencing hearing. Defense

counsel urged the court to consider the statements he made on appellant's behalf at the initial sentencing hearing. He further averred that a recent conversation with appellant's mother brought to light certain factors in appellant's background that were not articulated in the PSI, including "a series of abuses" appellant suffered at a young age at the hands of his father. (June 14, 2013 Tr. 4.) Counsel asserted that these factors might explain appellant's mental condition at the time he committed the offenses, and, to that end, counsel "may end up filing some motion in this case asking for maybe a reconsideration of the sentence or something." (June 14, 2013 Tr. 5.) Counsel also stated he had advised appellant about his conduct in prison and that he should take advantage of opportunities to improve both mentally and physically in an effort to overcome whatever issues caused him "to go haywire in such a serious way in such a short time." (June 14, 2013 Tr. 6.) Counsel averred that the case was "completely untriable because of the evidence, the testimony that would have been presented against him, the physical evidence that was out there as well as, I think, a confession." (June 14, 2013 Tr. 6.)

{¶ 42} After acknowledging the lengthy sentence imposed at the original sentencing hearing, the court stated:

> I can only say that if you review these charges, they are multiple, multiple, multiple, and this was tantamount to terrorizing the entire neighborhood, a lot of homes. And every one of them I dare say without exception are most serious charges. So, I understand, but I don't know that I have ever had a case that had this many charges, serious charges in such short order.

(June 14, 2014 Tr. 6-7.)

{¶ 43} We note initially that appellant failed to object to his sentence during the initial or resentencing hearings on any of the grounds he now asserts as error. Thus, he has forfeited all but plain error. *See* Crim.R. 52(B); *State v. Cochran,* 10th Dist. No. 11AP-408, 2012-Ohio-5899, ¶ 51, citing *State v. Worth,* 10th Dist. No. 10AP-1125, 2012-Ohio-666, ¶ 84. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." For an error to be "plain" within the meaning of Crim.R. 52(B), it " 'must be an "obvious" defect in the trial proceedings.' " *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 16, quoting *State v. Barnes,* 94 Ohio St.3d 21, 27 (2002). Reviewing courts notice plain

error " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Barnes* at 27, quoting *State v. Long,* 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.  "The burden of demonstrating plain error is on the party asserting it." *Payne* at ¶ 17.

{¶ 44} In *State v. Ibrahim,* 10th Dist. No. 13AP-167, 2014-Ohio-666, ¶ 16-17, this court discussed the  standard of review applicable to felony sentencing decisions:

> This court reviews a trial court's sentence to determine if it is clearly and convincingly contrary to law.  *State v. Green,* 10th Dist. No. 10AP-934, 2011-Ohio-6451, ¶ 7, citing *State v. Burton,* 10th Dist. No. 06AP-690, 2007-Ohio-1941, ¶ 19; R.C. 2953.08(B).  "In applying this standard, we look to the record to determine whether the sentencing court considered and properly applied the [non-excised] statutory guidelines and whether the sentence is otherwise contrary to law." *Green* at ¶ 7, citing *State v. Carse,* 10th Dist. No. 09AP-932, 2010-Ohio-4513, ¶ 60; *Burton.*
>
> After *Burton*, the Supreme Court of Ohio issued a plurality decision in *State v. Kalish*, 120 Ohio St.3d 23, 896 N.E.2d 124, 2008-Ohio-4912, finding appellate courts must apply a two-step approach when reviewing felony sentences.  First, appellate courts must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law.  If this factor is satisfied, then the appellate court reviews the trial court's decision to impose a term of imprisonment under the abuse of discretion standard.  *Id.* at ¶ 26, 896 N.E.2d 124; *State v. Vaughn,* 10th Dist. No. 09AP-73, 2009-Ohio-4970, ¶ 13.

{¶ 45} Having preliminarily set forth the pertinent facts and standard of review applicable to appellant's sentencing challenges, we now turn to a discussion of the individual assignments of error.  Appellant contends in his second and third assignments of error that the trial court failed to properly consider and apply the sentencing factors set forth in R.C. 2929.11 and 2929.12.

{¶ 46} In sentencing a felony offender, the trial court must consider the overriding purposes of sentencing, which are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state

or local government." R.C. 2929.11(A). This requires consideration of "the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). Further, pursuant to R.C. 2929.12(A), the court must consider the factors set forth R.C. 2929.12(B) and (C) relating to the seriousness of the offender's conduct, as well as the factors set forth in R.C. 2929.12(D) and (E) relating to the likelihood of recidivism, along with any other relevant factors. *State v. Patrick*, 10th Dist. No. 10AP-26, 2011-Ohio-1592, ¶ 24.

{¶ 47} In *Patrick,* this court discussed a trial court's duty with regard to R.C. 2929.11 and 2929.12, at ¶ 25:

> [T]he failure to indicate at the sentencing hearing that the court has considered the factors in R.C. 2929.11 and 2929.12 does not automatically require reversal. *State v. Reed,* 10th Dist. No. 09AP-1163, 2010-Ohio-5819, ¶ 8. "When the trial court does not put on the record its consideration of R.C. 2929.11 and 2929.12, it is presumed that the trial court gave proper consideration to those statutes." *Id.*, citing *Kalish* at ¶ 18, fn. 4. "A trial court's rote recitation that it has considered applicable factors satisfies the court's duty to follow the relevant statutes in sentencing an offender." *State v. Easley,* 10th Dist. No. 08AP-755, 2009-Ohio-2984, ¶ 19 (citations omitted). "The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett,* 88 Ohio St.3d 208, 215, 2000-Ohio-302.

{¶ 48} In the present case, the trial court's judgment entry states that it "considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12." This court has previously held that such language in the judgment entry defeats a claim that the trial court failed to consider statutory sentencing guidelines. *Patrick* at ¶ 26, citing *State v. Reeves,* 10th Dist. No. 09AP-493, 2010-Ohio-4018, ¶ 16; *Cochran,* 2012-Ohio-5899, ¶ 53, citing *State v. Green,* 10th Dist. No. 10AP-934, 2011-Ohio-6451, ¶ 8.

{¶ 49} Appellant contends that none of the factors enumerated in R.C. 2929.12(B) indicated that his conduct was more serious than conduct normally constituting the

offense.   In considering the factors set forth in R.C. 2929.12, the trial court has the discretion "to determine the weight to assign a particular statutory factor."   *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000), citing *State v. Fox,* 69 Ohio St.3d 183, 193 (1994). Further, in addition to considering the seriousness and recidivism factors, the trial court may consider any other factors which are relevant to achieving the purposes and principles of sentencing.  *See* R.C. 2929.12(A).

{¶ 50} Here, the trial court emphasized that appellant committed multiple home invasions in the same neighborhood over a very short period of time.   Indeed, the trial court characterized appellant's five-week crime spree as "tantamount to terrorizing the entire neighborhood," (June 14, 2013 Tr. 7) and as a "vicious rampage."  (Jan. 25, 2013 Tr. 3.)   The trial court also referenced the apparent "terror and horror" the victims suffered by appellant's "horrendous crimes."  (Jan. 25, 2013 Tr. 32.)  The trial court noted that appellant entered the victims' homes without regard for whether they were present and that those victims who were present were held hostage.   The court further noted that the vast majority of the crimes were committed with a firearm.

{¶ 51} The court clearly believed that appellant's actions warranted a harsh sentence, averring that to do otherwise would afford persons little sense of security in their homes.   Upon review of the record, we find no abuse of discretion in the trial court's imposition of a lengthy prison sentence on appellant, as he pled guilty to a number of offenses resulting from multiple home invasions involving a firearm.  "The more crimes an individual commits, the more likely it is that the ultimate prison sentence will indeed be a lengthy one."  *State v. Watkins,* 10th Dist. No. 13AP-133, 2013-Ohio-5544, ¶ 19 (noting that the severity of sentence resulted in part from the number of crimes committed).

{¶ 52} Appellant also contends the trial court failed to consider rehabilitation and that only three of the recidivism factors in R.C. 2929.12(D) pertain to appellant.  The trial court clearly determined that appellant was not a candidate for rehabilitation.  The trial court implicitly lamented appellant's lack of rehabilitative potential, stating that appellant, a young man, had "ruin[ed] and "waste[d]" his life. (Jan. 25, 2013, Tr. 32.) Further, as to the recidivism factors in R.C. 2929.12(D), we note that appellant appears to concede that three of the five factors apply to him.

{¶ 53} For the foregoing reasons, we overrule appellant's second and third assignments of error.

{¶ 54} In his fourth assignment of error, appellant contends the trial court erred by failing to make the findings required under Crim.R. 32(A)(4) and R.C. 2929.14(C)(4) before imposing consecutive sentences.

{¶ 55} Crim.R. 32(A)(4) provides, in part, that "[a]t the time of imposing sentence, the court shall * * * [i]n serious offenses, state its statutory findings."  R.C. 2929.14(C)(4) provides:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offer and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 292918 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 56} "R.C. 2929.14(C)(4) now requires the trial court to make three findings before imposing consecutive sentences: (1) that consecutive sentences are necessary to protect the public from * * * future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of the subsections (a), (b), or (c)

apply." *State v. Roush,* 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 76. While the trial court is not required to use talismanic words to comply with R.C. 2929.14(C)(4) before imposing consecutive sentences, the trial court must make clear on the record that it made the required findings. *State v. Boynton,* 10th Dist. No. 12AP-975, 2013-Ohio-3794, ¶ 9, citing *State v. Marton,* 8th Dist. No. 99253, 2013-Ohio-3430, ¶ 13 ("it must be *clear from the record that the trial court actually made the findings required* by statute"). (Emphasis sic.)

{¶ 57} The record reveals that although the court discussed the seriousness of appellant's offenses, the need to protect the public and punish appellant, and that the offenses were committed as part of a "crime spree," the court's statements were not made expressly in the context of imposing consecutive sentences. Further, the court did not make the specific findings required by R.C. 2929.14(C)(4). This court has consistently held that "when the record demonstrates that the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences on multiple offenses, 'appellant's sentence is contrary to law and constitutes plain error.' " *State v. Ayers,* 10th Dist. No. 13AP-371, 2014-Ohio-276, ¶ 15, quoting *State v. Wilson,* 10th Dist. No. 12AP-551, 2013-Ohio-1520, ¶ 18; *Boynton* at ¶ 12; *see also State v. Bailey,* 10th Dist. No. 12AP-699, 2013-Ohio-3596, ¶ 46. Although the state disagrees with the plain-error-as-a-matter-of-law standard employed in these cases, we are bound by the doctrine of stare decisis and will follow this court's precedent. Consistent with the holdings in the above-cited cases, we conclude that the trial court's failure to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences on appellant's multiple offenses is contrary to law and constitutes plain error. Accordingly, we must remand this matter to the trial court to consider whether consecutive sentences are appropriate pursuant to R.C. 2929.14(C)(4) and, if so, to enter the proper findings on the record. *Boynton* at ¶ 12; *State v. Corker*, 10th Dist. No. 13AP-264, 2013-Ohio-5446, ¶ 28, citing *State v. Bass*, 10th Dist. No. 12AP-622, 2013-Ohio-4503, ¶ 44. Appellant's fourth assignment of error is sustained.

{¶ 58} In his fifth assignment of error, appellant contends the trial court erred in failing to merge the convictions for kidnapping and aggravated robbery stemming from the June 20, 2012 incident involving two victims. As noted above, the prosecutor's factual

summary of this incident established that appellant and Mims entered a residence, held one victim at gunpoint, got a second victim out of bed at gunpoint, led both victims around the house looking for items of value, and ultimately stole several items. Appellant pled guilty to one count of aggravated burglary, two counts of aggravated robbery (one for each victim) and two counts of kidnapping (one for each victim). The trial court imposed concurrent sentences on the aggravated robberies, concurrent sentences on the kidnappings, and ordered that they be served consecutively to each other and to the aggravated burglary. Appellant contends the trial court should have merged the kidnapping and aggravated robbery convictions for each victim because "the conduct with respect to each victim was the same for the aggravated robbery and the kidnapping." (Appellant's brief, at 44.)

{¶ 59} Pursuant to R.C. 2941.25(A), where a defendant's conduct " 'can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.' " *Roush,* 2013-Ohio-3162, ¶ 66, quoting R.C. 2941.25(A) Where, however, " 'the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.' " *Id.*, quoting R.C. 2941.25(B).

{¶ 60} In *State v. Rance,* 85 Ohio St.3d 632 (1999), the Supreme Court of Ohio held that crimes are allied offenses of similar import "[i]f the elements of the crimes 'correspond to such a degree that the commission of one crime will result in the commission of the other.' " *Id.* at 636, quoting *State v. Jones*, 78 Ohio St.3d 12, 13 (1997). The Supreme Court stated that this analysis requires courts to compare the statutory elements of the offenses in the "abstract." *Rance* at 636. Subsequently, the Supreme Court clarified *Rance* to hold that, "if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, paragraph one of the syllabus.

{¶ 61} The Supreme Court established a new allied-offense analysis in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. There, the Supreme Court averred that a trial court "must determine prior to sentencing whether the offenses were committed by the same conduct," and therefore "the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger." *Id.* at ¶ 47. Accordingly, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.* at syllabus.

{¶ 62} Initially, we swiftly dispose of the state's argument that the *Johnson* decision left untouched earlier decisions standing for the proposition that, in determining whether multiple offenses share a similar import, courts are to compare the elements to determine whether the commission of one offense "will necessarily result" in commission of the other offense. This court has previously rejected this argument and "we have consistently applied the two-part test set forth in the *Johnson* plurality opinion when conducting allied-offense analysis." *State v. Damron*, 10th Dist. No. 12AP-209, 2012-Ohio-5977, ¶ 11, citing *State v. Carson*, 10th Dist. No. 11AP-809, 2012-Ohio-4501, ¶ 16.

{¶ 63} Under the two-part *Johnson* analysis, "we first examine whether the offenses are able to be committed with the same conduct." *Damron* at ¶ 11. *See also State v. Rivera,* 10th Dist. No. 10AP-945, 2012-Ohio-1915, ¶ 59, citing *Johnson* at ¶ 48 ("The first question is whether it is possible to commit one offense and commit the other with the same conduct."). If it is possible to commit both offenses with the same conduct, the test then requires the court to determine whether the offenses were, in fact, committed by the same conduct, "i.e., 'a single act, committed with a single state of mind.' " *Johnson* at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50. If the answer to both inquiries is yes, the court must merge the allied offense prior to sentencing. *Johnson* at ¶ 50. "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." (Emphasis sic.) *Id.* at ¶ 51. "As an appellate court, we must employ a de novo standard in reviewing the trial court's determination whether

R.C. 2941.25 requires merger of multiple convictions." *Corker*, 2013-Ohio-5446, ¶ 28, citing *Roush* at ¶ 47, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1.

{¶ 64} Turning to the offenses at issue in the present case, a conviction for aggravated robbery, as defined in R.C. 2911.01(A), requires proof that an offender, "in * * * committing a theft offense * * * [had] a deadly weapon on or about the offender's person or under the offender's control and either display[ed] the weapon, brandish[ed] it, indicate[d] that the offender possess[ed] it, or use[d] it."    Kidnapping, in accordance with R.C. 2905.01, requires proof that an offender "by force, threat, or deception * * * remove[d] another person from the place where the other person [was] found or restrain[ed] the liberty of the other person * * * [t]o facilitate the commission of any felony."

{¶ 65} "The Supreme Court has recognized that the commission of aggravated robbery necessarily involves the restraint of the victim." *Corker* at ¶ 29, citing *State v. Jenkins*, 15 Ohio St.3d 164, 198 (1984), fn. 29.  Thus, while it is possible to commit aggravated robbery and kidnapping with the same conduct, the further inquiry under *Johnson* is whether the offenses were in fact committed by the same conduct.  "Whether a defendant has established the 'same conduct' requirement of R.C. 2941.25(A) inherently depends on " ' "the particular facts of each case. " ' "  *State v. Cochran,* 2012-Ohio-5899, ¶ 62, quoting *State v. Cooper,* 104 Ohio St.3d 293, 2004-Ohio-6553, ¶ 19, quoting *Jones* at 14.  In this case, the merger issue was not discussed at either of the sentencing hearings, and the record does not indicate that the trial court considered or applied *Johnson.*  This court has held that " 'where the record suggests that multiple offenses to which a defendant has pled guilty or no contest may be allied offenses of similar import, but the record is inconclusive in that regard, the trial court has a duty to conduct inquiry concerning the circumstances of the offenses, and the trial court's failure to do so is plain error.' "  *State v. Bryant,* 10th Dist. No. 12AP-703, 2013-Ohio-5105, ¶ 18, quoting *State v. Cleveland,* 2d Dist. No. 24379, 2011-Ohio-4868, ¶ 19.

{¶ 66} In the instant case, the prosecutor's summary statement at the plea hearing contains the only factual background regarding the incident.  While the limited facts as recited by the prosecutor raise an issue as to whether the offenses are subject to merger, the record on appeal is not developed sufficiently to determine whether the offenses were

committed by the same conduct, i.e., "a single act, committed with a single state of mind." *Johnson* at ¶ 49. We thus conclude that the matter should be remanded to the trial court to "apply *Johnson* [and] to consider appellant's conduct" and determine whether appellant's offenses should merge. *Bryant* at ¶ 19, quoting *State v. Rivera,* 2012-Ohio-1915, ¶ 66. "[E]ven though offenses may be of similar import, [a defendant] 'can be sentenced for both if he committed the crimes separately or with a separate animus.' " *Bryant* at ¶ 19, quoting *State v. Nguyen,* 4th Dist. No. 12CA14, 2013-Ohio-3170, ¶ 108. Appellant's fifth assignment of error is sustained.

### C. Sixth Assignment of Error – Ineffective Assistance of Counsel

{¶ 67} In his sixth assignment of error, appellant argues his defense counsel rendered ineffective assistance. In Ohio, a properly licensed attorney is presumed competent and the burden is upon appellant to demonstrate counsel's ineffectiveness. *State v. Davis,* 10th Dist. No. 13AP-98, 2014-Ohio-90, ¶ 20, citing *Vaughn v. Maxwell,* 2 Ohio St.2d 299, 301 (1965). In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court of the United States established a two-prong test for ineffective assistance of counsel. Under *Strickland,* the defendant first must demonstrate that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. *Id.* at 687. Second, the defendant must demonstrate that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Id.* A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of convictions based upon guilty pleas, the prejudice element of an ineffective assistance of counsel claim generally requires a showing that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *State v. Bonnet,* 12th Dist. No. CA96-07-059 (Mar. 3, 1997), citing *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

{¶ 68} Appellant first contends his defense counsel was ineffective because he failed to conduct a reasonable investigation into relevant mitigation factors prior to sentencing. Appellant particularly notes defense counsel's averments at the resentencing hearing regarding the discussion he had with appellant's mother about alleged childhood

abuse inflicted on appellant by his father and that he might file a motion for reconsideration based upon this newly discovered information. Appellant argues that defense counsel did not reveal the substance of the mother's statement, did not request a continuance to conduct further investigation, did not have the mother provide a statement at the sentencing hearing, and did not file a motion for reconsideration of the sentence. Appellant maintains that had defense counsel properly prepared for the sentencing hearings, the outcome of the sentencing proceeding would have been different.

{¶ 69} "An attorney who fails to conduct a reasonable investigation into a defendant's history and background provides ineffective assistance." *State v. Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 104. However, appellant's arguments regarding defense counsel's alleged failure to conduct a satisfactory investigation are purely speculative and would require resort to evidence outside the record. "When affidavits or other proof outside the record are necessary to support an ineffective assistance claim, however, it is not appropriate for consideration on direct appeal." *State v. Zupancic,* 9th Dist. No. 12CA0065, 2013-Ohio-3072, ¶ 4, citing *State v. Madrigal,* 87 Ohio St.3d 378, 390-91 (2000). " '[A] claim of ineffective assistance of counsel on direct appeal cannot be premised on decisions of trial counsel that are not reflected in the record of proceedings * * * [and] [s]peculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel.' " *Zupancic* at ¶ 4, quoting *State v. Leyland,* 9th Dist. No. 23833, 2008-Ohio-777, ¶ 7.

{¶ 70} Appellant cites nothing in the record to demonstrate that his counsel conducted a less than adequate investigation into appellant's background. We note that defense counsel spoke on appellant's behalf and read appellant's prepared statement, which included mitigating factors pertaining to his homelessness, drug use, and mental health issues as a purported explanation for his criminal behavior. In addition, defense counsel provided appellant the opportunity to speak at the sentencing hearing, and appellant expressed remorse for his actions. Further, we have no way of knowing whether revelation of the substance of the mother's statement, allowing the mother to speak at the sentencing hearing, requesting a continuance of the hearing, or filing a motion for reconsideration would have been beneficial.

{¶ 71} Moreover, even if defense counsel performed deficiently, appellant has failed to establish prejudice, as nothing in the record suggests that his sentence would have been different had defense counsel more fully developed the alleged childhood abuse mitigation evidence. Appellant was convicted of 21 felony offenses involving use of a firearm, resulting in a 150-year sentence. Appellant fails to identify any reason why the trial court would have imposed a lesser sentence even if defense counsel had done what appellant now contends should have been done.

{¶ 72} Appellant also argues that his defense counsel was ineffective for not objecting to the trial court's failure to merge the kidnapping offenses and the aggravated robbery offenses pertaining to the June 20, 2012 incident involving two victims. We note initially that appellant makes no separate argument in support of this claim in contravention of App.R. 16(A)(7). Accordingly, this court may disregard this portion of the assignment of error. App.R. 12(A)(2). Moreover, as previously determined in our disposition of appellant's fifth assignment of error, the merger issue must be remanded for resolution by the trial court in the first instance. Accordingly, the issue whether appellant's defense counsel was ineffective in failing to object is moot, and we need not address it. App.R. 12(A)(1)(c).

{¶ 73} Thus, we overrule in part and render moot in part appellant's sixth assignment of error.

{¶ 74} For the foregoing reasons, appellant's first, second, and third assignments of error are overruled, appellant's fourth and fifth assignments of error are sustained, and appellant's sixth assignment of error is overruled in part and moot in part. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part and remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment affirmed in part; reversed in part; cause remanded.*

KLATT and CONNOR, JJ., concur.

T. BRYANT, J., retired, of the Third Appellate District,
assigned to active duty under authority of Ohio Constitution,
Article IV, Section 6(C).

————————————